UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WHITE PLAINS AVIATION PARTNERS,
LLC d/b/a MILLION AIR WHITE PLAINS,

<div style="text-align:center">Plaintiff,</div>

-against-

THE COUNTY OF WESTCHESTER,

<div style="text-align:center">Defendant.</div>

Case No. 21 Civ. 5312 (VB)

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

YANKWITT LLP

Russell M. Yankwitt
Ross E. Morrison
Benjamin C. Fishman
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:    (914) 686-1500
Fax:    (914) 487-5000
russell@yankwitt.com
ross@yankwitt.com
bfishman@yankwitt.com

CUDDY & FEDER LLP

Jordan M. Brooks
Brendan M. Goodhouse
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel.:    (914) 761-1300
Fax:    (914) 761-5372
jbrooks@cuddyfeder.com
bgoodhouse@cuddyfeder.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................. 3

    A.   The Lease Provides for a Process to Construct the Modified Hangar ............................ 3

    B.   The County Unreasonably Denies Approval Under Section 6.2 .................................... 4

    C.   The County Continues to String Million Air Along and Unreasonably Blames Million Air for Running Afoul of the FAA .................................................................. 7

    D.   The County Persists With its Unreasonable Delay While Unfairly Advantaging Million Air's Competitor ............................................................................................ 8

STANDARD OF REVIEW ..................................................................................................... 9

ARGUMENT ......................................................................................................................... 10

I.    Article 6 of the Lease Applies to the Modified Hangar Plans ............................................. 10

    A.   Section 6.2 Unambiguously Applies to the Modified Hangar ..................................... 10

    B.   Section 6.5 Unambiguously Applies to the Modified Hangar ..................................... 15

    C.   To the Extent the Court Finds Any Ambiguity in the Lease, It Must Allow the Parties to Develop a Full Evidentiary Record ............................................................. 16

II.   The Declaratory Judgment Claim Is Not Duplicative .......................................................... 17

III.  The County Violated the Covenant of Good Faith and Fair Dealing .................................... 18

    A.   Million Air Sufficiently Alleges Its Good Faith and Fair Dealing Claim .................... 18

    B.   The Good Faith and Fair Dealing Claim Is Not Duplicative ....................................... 22

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

Cases                                                                                      Page(s)

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144 (2002).................................................................................................18

*Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*,
    215 F. Supp. 3d 302 (S.D.N.Y. 2016).......................................................................17

*Charter Contracting Co., LLC v. Orange & Rockland Utilities, Inc.*,
    No. 20 Civ. 795 (VB), 2020 WL 7774337 (S.D.N.Y. Dec. 30, 2020) ....................22

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
    977 F.2d 734 (2d Cir. 1992) .....................................................................................17

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995).................................................................................................18

*Fantozzi v. Axsys Techs., Inc.*,
    No. 07 Civ. 2667 (LMM), 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)..................22

*Fishoff v. Coty Inc.*,
    634 F.3d 647 (2d Cir. 2011) .........................................................................18, 19, 24

*GeigTech East Bay LLC v. Lutron Electronics Co., Inc.*,
    352 F. Supp. 3d 265 (S.D.N.Y. 2018) ......................................................................16

*Global Network Comms., Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006).......................................................................................9

*Global Payroll Investors LLC v. Immedis, Inc.*,
    No. 20 Civ. 4508 (JS) (AYS), 2021 WL 3501377 (E.D.N.Y. July 13, 2021)...........22

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings*, LLC,
    808 F. Supp. 2d 552 (S.D.N.Y. 2011) ......................................................................24

*Hoffman v. Nutmeg Music Inc.*,
    No. 17 Civ. 01848 (VLB), 2018 WL 4471708 (D. Conn. Sept. 18, 2018) ...............18

*Icahn School of Medicine at Mount Sinai v. Health Care Serv. Corp.*,
    234 F. Supp. 3d 580 (S.D.N.Y. 2017) ......................................................................17

*Kleinman v. Elan Corp.*,
    706 F.3d 145 (2d Cir. 2013) .......................................................................................9

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) .....................................................................................12

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020) .......................................................................................9

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) ..............................................................................20

*Ruiz v. Liberty Mut. Fire Ins. Co.*,
    No. 19 Civ. 4399 (VB), 2019 WL 7293377 (S.D.N.Y. Dec. 30, 2019) ...............9, 23

*Sandler v. Montefiore Health Sys., Inc.*,
    No. 16 Civ. 2258 (JPO), 2018 WL 4636835 (S.D.N.Y. Sept. 27, 2018) .................24

ii

*Schweizer v. Sikorsky Aircraft Corp.*,
   No. 10 Civ. 6547 (MAT), 2014 WL 5460504 (W.D.N.Y. Oct. 27, 2014) .............................. 22

*Sim v. N.Y. Mailers' Union No. 6*,
   166 F.3d 465 (2d Cir. 1999) ...................................................................................... 21

*Southern Telecom Inc. v. ThreeSixty Brands Group, LLC*,
   No. 20 Civ. 2151, 2021 WL 621235 (S.D.N.Y. Feb. 17, 2021) ........................................ 19, 20

*Spinelli v. Nat'l Football League*,
   903 F.3d 185 (2d Cir. 2018) ...................................................................................... 20

*Stanley v. Direct Energy Servs., LLC*,
   466 F. Supp. 3d (S.D.N.Y. 2020) .......................................................................... 20, 24

*Starter Corp. v. Converse, Inc.*,
   170 F.3d 286 (2d Cir. 1999) ...................................................................................... 16

*Stop & Shop Supermarket Co. LLC v. Goldsmith*,
   No. 10 Civ. 3052 (VB), 2013 WL 3179501 (S.D.N.Y. June 24, 2013) .................................. 23

*T.P. v. Elmsford Union Free Sch. Dist.*,
   No. 11 Civ. 5133 (VB), 2012 WL 860367 (S.D.N.Y. Feb. 27, 2012) .................................... 22

*Valley Stream Foreign Cars, Inc. v. American Honda Motor Co., Inc.*,
   209 F. Supp. 3d 547 (E.D.N.Y. 2016) .......................................................................... 20

*Williams v. New York City Dep't of Correction*,
   No. 19 Civ. 5200 (RA), 2021 WL 848709 (S.D.N.Y. Mar. 5, 2021) ...................................... 22

*Zilg v. Prentice-Hall, Inc.*,
   515 F. Supp. 716 (S.D.N.Y. 1981) .............................................................................. 21

Plaintiff White Plains Aviation Partners, LLC d/b/a Million Air White Plains ("Million Air") respectfully submits this memorandum of law in opposition to the Motion to Dismiss submitted by Defendant the County of Westchester (the "County") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This action arises out of the County's ongoing breach of its contractual obligations and duty of good faith and fair dealing pursuant to a 2016 lease (the "Lease") with Million Air. Under the Lease, Million Air operates a "fixed base operation" ("FBO") at the Westchester County Airport (the "Airport") to provide private aircraft services, including hangars, maintenance and fueling, and a high-end terminal.  In its Complaint (Dkt. 1), Million Air details how, from 2017 to 2021, the County violated the Lease's modification approval process by repeatedly and unreasonably refusing to approve Million Air's proposal to make improvements to the FBO by replacing an existing, out-of-date hangar (the "Existing Hangar") with a modernized hangar (the "Modified Hangar") – an improvement that is explicitly contemplated by the Lease.  The County compounded this breach by violating the Lease provision that requires it to cooperate with Million Air in obtaining any necessary environmental and regulatory approvals for modifications like the Modified Hangar.  In addition, the County breached its duty of good faith and fair dealing by telling Million Air that it supported the Modified Hangar plan, all the while continuously moving the goalposts and conjuring ever-shifting hoops for Million Air to jump through for approval.

Based on these detailed and well-pleaded allegations, the Complaint asserts claims for: (1) breach of contract, (2) a declaratory judgment that the Modified Hangar plan is governed by the Lease's modification approval process, and (3) breach of the covenant of good faith and fair

dealing.  The County does not (because it cannot) defend the reasonableness of its refusal to approve the Modified Hangar plan.  Instead, it relies on a series of legally and factually meritless arguments that ignore the plain language of the Lease, the facts Million Air has pleaded, and prevailing case law.  For the following reasons, the Court should deny the County's motion.

First, the County's argument that Million Air's breach of contract claim should be dismissed because the Lease provisions governing improvements do not apply to the Modified Hangar plan is unsupportable.  The clear terms of the Lease explicitly identify "additional hangars" as an "improvement" subject to the Lease's modification and regulatory approval processes.  Because the County's interpretation of the Lease is contrary to the unambiguous contractual terms, the Court should hold that Million Air states a claim for breach of the Lease and deny the County's motion.  And, even if the Court finds the Lease terms ambiguous – which they are not – it should deny the motion so a full evidentiary record can be developed.

Second, the County erroneously argues the declaratory judgment claim should be dismissed as duplicative of its breach of contract claim.  The declaratory judgment claim seeks a ruling that the Modified Hangar plan is governed by the Lease's modification approval provisions.  That determination would serve an important clarifying function in this case and, in contrast to the breach of contract claim, would not require a ruling that the County *violated* those provisions by unreasonably withholding approval of the Modified Hangar plan.  The declaratory judgment and breach of contract causes of action therefore are not duplicative.

Third, the County misconstrues Million Air's breach of the covenant of good faith and fair dealing claim as insufficiently pleaded and duplicative of the breach of contract claim.  The Complaint alleges that the County initially instructed Million Air to hold off on constructing a stormwater mitigation system on the leased premises until the Modified Hangar was built, but

then reversed itself and forced Million Air to construct a stormwater system immediately.  This

bad-faith reversal forced Million Air to tear up already constructed portions of prior

improvements made to the FBO, thereby imposing significant costs and damages.  The breach of

good faith and fair dealing claim is also supported by the unfair favoritism the County accorded

Million Air's competitor at the Airport, Ross Aviation.  Those allegations are distinct from the

breach of contract claim and resulted in additional damages to Million Air.  Moreover, because

the County disputes the applicability of the Lease's modification approval provisions to the

Modified Hangar plan, it is premature to dismiss the breach of the duty of good faith and fair

dealing claim as duplicative on a 12(b)(6) motion.  The Court should therefore deny the County's

motion.

<div align="center">

**STATEMENT OF RELEVANT FACTS**

</div>

**A.      The Lease Provides for a Process to Construct the Modified Hangar**

Million Air's corporate parent operates state-of-the-art FBOs at airports around the

country and internationally, including Million Air's FBO at the Airport.  (Compl. ¶¶ 3, 26-27.)

In 2014, Million Air assumed a lease for premises at the Airport that included the out-of-date

Existing Hangar, aircraft ramps, and a terminal.  (*Id.* ¶ 34.)  To facilitate modernizing the

premises and to accommodate larger aircraft, Million Air and the County began negotiating a

new lease.  (*Id.* ¶¶ 35-36.)  During these negotiations, Million Air proposed to construct a new,

approximately 50,000 square foot hangar, expand and upgrade the existing terminal, and

construct the Modified Hangar to replace the Existing Hangar.  (*Id.* ¶ 37.)

The County recognized that these proposed improvements would be beneficial, and

therefore entered into the Lease with Million Air in 2016.[1]  (*Id.* ¶¶ 38, 43.)  However, because

---

[1] The Lease is attached to the Complaint as Exhibit A.

the County wanted to proceed incrementally, the new construction specifically authorized by the Lease was limited to certain improvements defined in the Lease as the "Proposed Improvements": the construction of the new 50,000 square foot hangar (the "Completed Hangar") and the expansion and improvement of the existing terminal.[2]  (*Id.* ¶¶ 40-42.)  Despite the limited scope of the improvements specifically set forth in the Lease, the parties agreed and understood that Million Air, with the County's support, would construct the Modified Hangar at a future date.  (*Id.*)

In recognition of that understanding, the parties agreed to Section 6.2 of the Lease, which provides that Million Air can make material changes or modifications to the plans for the leased premises.  (*Id.* ¶¶ 44-47, 49-50.)  Section 4.2 of the Lease makes clear that the modifications covered by Section 6.2 include constructing additional hangars on the premises.  (*Id.* ¶¶ 51-56.)  Section 6.2 further provides that the County, whose approval is required for such additional improvements, may not unreasonably withhold or delay its approval.  (*Id.* ¶ 47.)

Similarly, Section 6.5 of the Lease requires the County to assist and cooperate with Million Air "in good faith" to obtain any environmental or other governmental approvals necessary for new construction like the Modified Hangar.  (*Id.* ¶¶ 48-49.)

### B.      The County Unreasonably Denies Approval Under Section 6.2

After the parties executed the Lease in 2016, Million Air began work on the Proposed Improvements, which were completed, with the County's approval, by early 2019.  (*Id.* ¶¶ 57-

---

[2] While Million Air refers to these improvements as the Initial Improvements in the Complaint – to indicate that they have been completed and are therefore no longer "proposed" – they are referred to herein as the Proposed Improvements, in order to track the language of the Lease.  In addition, for clarity, this brief defines three hangars at the FBO: (1) the out-of-date Existing Hangar, which was present at the time the parties entered the Lease; (2) the Modified Hangar, which Million Air has proposed to replace the Existing Hangar; and (3) the 50,000 square foot Completed Hangar, which was explicitly authorized in the Lease as a Proposed Improvement and which has since been built.

60.)  In September 2017, Million Air approached the County to move forward with the replacement of the Existing Hangar with the Modified Hangar.  (*Id.* ¶¶ 62-67.)  On November 14, 2017, Million Air submitted a letter to the County setting forth the numerous benefits the Modified Hangar would bring, including new jobs, additional tax revenues and rent to the County, and significant environmental benefits, including reduced noise and carbon emissions due to a significant reduction in flights to and from nearby airports.[3]  (*Id.* ¶¶ 70-71)  In that letter, Million Air requested approval for the plans for the Modified Hangar under Section 6.2 of the Lease.[4]  (*Id.*)

The County's December 12, 2017 letter in response marked the beginning of years of reversals and bad-faith prevarication on the County's part.  In that letter, the County denied approval for the Modified Hangar plans "pursuant to Section 6.2 of the Lease."[5]  (*Id.* ¶¶ 72-73.)  As the purported basis for that denial, the County claimed the Modified Hangar was not "required" and that regulatory approvals needed to be obtained *prior* to the County's approval of the plans for the hangar.  (*Id.*)  As set forth in the Complaint, both of these objections were unreasonable.  (*Id.* ¶¶ 74-79.)

Million Air responded by letter dated December 19, 2017, pointing out that the County could not reject modifications under Section 6.2 simply based on a unilateral determination that

---

[3] Such flights, known as "ferry" or "repositioning" flights, are currently necessary due to lack of hangar space at the Airport.  (*See* Compl. ¶¶ 9, 31.)  Because of that lack of space, many arriving aircraft, rather than remaining at the Airport and awaiting their passengers, must instead engage in non-productive flights to regional airports to be hangared while awaiting their passengers' return flights.  (*See id.*)  The construction of the Modified Hangar would expand available hangar space and thereby decrease net flights in and out of the Airport by more than 1,000 flights per year.  (*See id.* ¶¶ 9, 31, 121.)

[4] Million Air's November 14, 2017 letter is appended as Exhibit A to the County's Declaration in support of its Motion to Dismiss (Dkt. 17-1).

[5] The County's December 12, 2017 letter responding to Million Air's November 14, 2017 letter is appended as Exhibit B to the County's Declaration (Dkt. 17-2).

they are not "required."  (*Id.* ¶ 80.)  Million Air also set forth additional benefits of the Modified

Hangar and demonstrated it had provided the County with all the information the County had

requested regarding environmental and regulatory requirements, information that went far

beyond what Million air was obligated to provide under Section 6.2.  (*Id.* ¶¶ 80-81.)

By letter dated January 17, 2018, the County again refused to approve the Modified

Hangar plans.  (*Id.* ¶ 82.)  This time, only a month after its first letter rejecting the plans in

express reliance on Section 6.2, the County claimed that Section 6.2 did not apply at all, because

the proposed hangar constituted a "new project."  (*Id.* ¶¶ 83-84.)

Despite refusing to approve the Modified Hangar under Section 6.2, the County, in its

January 2018 letter and in subsequent meetings held with Million Air in early 2018, instructed

Million Air to proceed with its plans for the Modified Hangar, on the assumption that an

amended lease would be executed that would cover the project.[6]  (*Id.* ¶¶ 86-90, 98-100.)  The

County also repeatedly advised Million Air to prepare a stormwater mitigation plan covering

*both* the Proposed Improvements and the Modified Hangar, which the County would then submit

to the U.S. Federal Aviation Administration (the "FAA") for that agency's approval under the

National Environmental Policy Act ("NEPA").  (*Id.* ¶¶ 87-88, 92-94, 101, 115.)

Without waiving its rights under the Lease, Million Air began to prepare the requested

amended lease and also submitted the requested stormwater plans covering both the Proposed

Improvements and the Modified Hangar.  (*Id.* ¶¶ 91, 95-96.)  In July 2018, the County confirmed

to Million Air that it had submitted Million Air's stormwater plans to the FAA.  (*Id.* ¶ 101.)

---

[6] An amended lease would require approval from the County's Board of Legislators.  (Compl. ¶ 90.)

### C.     The County Continues to String Million Air Along and Unreasonably Blames Million Air for Running Afoul of the FAA

By the fall of 2018, the County had still not approved the plans for the Modified Hangar, nor had it moved forward with the lease amendment it had demanded.  (*Id.* ¶ 102.)  Accordingly, by letter dated October 18, 2018, Million Air again requested formal approval of the Modified Hangar under Section 6.2 of the Lease.  (*Id.* ¶ 103.)

On November 2, 2018, the County received another letter, this one from the FAA.  (*Id.* ¶¶ 106-09.)  The FAA stated it had learned that the County had "allowed" Million Air to begin construction of the Proposed Improvement "prior to completion" of the FAA's approval process under NEPA for the stormwater mitigation plans, which the FAA characterized as a "significant concern."  (*Id.*)  The FAA "strongly advise[d]" the County to place any further construction at the Airport "on hold until completion of the NEPA process."  (*Id.*)  The County had apparently made a significant misstep when it instructed Million Air to complete construction of the Proposed Improvements without a stormwater system, in the absence of FAA environmental approval.  (*Id.*)

Rather than take responsibility for its own mistake, the County attempted to blame Million Air.  In response to Million Air's October 2018 letter requesting approval for the Modified Hangar, the County, by letter dated November 9, 2018, again denied approval, this time blaming Million Air for doing precisely what the County had demanded: having expressly directed Million Air *not* to submit a stormwater mitigation plan for only the Proposed Improvements, and instead to submit a combined plan for the Proposed Improvements *and* the Modified Hangar, the County now faulted Million Air for doing exactly that.  (*Id.* ¶¶ 103-04, 115.)  The County then hypocritically cited Million Air's purported "failure" to complete a stormwater mitigation plan for only the Proposed Improvements as a basis for denying the

Modified Hangar plans.  (*Id.* ¶¶ 105, 115.)

In subsequent letters, sent in November 2018 and April 2019, the County again disingenuously claimed that Million Air had "failed" to produce a stormwater management plan for the Proposed Improvements alone and demanded that Million Air implement such a plan. (*Id.* ¶¶ 111-15.)  Million Air, having no choice, agreed to do so, at great cost.  (*Id.* ¶¶ 114-16.)  In particular, the implementation of a stormwater system covering only the Proposed Improvements required tearing up significant portions of the premises, which in turn caused significant business disruption and multimillion-dollar costs and lost revenue.  (*Id.* ¶ 116.)

**D.      The County Persists With its Unreasonable Delay
          While Unfairly Advantaging Million Air's Competitor**

Between 2019 and 2021, the County, contrary to its repeated assurances that it intended to move forward with the Modified Hangar and the amended lease, instead continued to shift the goalposts.  The County demanded that Million Air take steps in furtherance of the Modified Hangar project, such as drafting the amended lease, commissioning an independent study of flight patterns, and preparing stormwater mitigation plans, with the promise that, once they were done, the project could proceed.  (*Id.* ¶¶ 117-27.)  But the County did not keep its promises, and instead continued to unreasonably withhold its approval under Section 6.2, while also refusing to proceed with the amended lease.  (*Id.*)

The County also countenanced lease violations by a competitor of Million Air, Ross Aviation.  (*Id.* ¶¶ 131-36.)  Ross Aviation was accommodating planes weighing more than 50,000 pounds ("Overweight Aircraft") on its premises at the Airport, which is not permitted under its lease – but is permitted under Million Air's.  (*Id.* ¶ 132.)  Despite Ross Aviation paying only a small fraction of the rent that Million Air pays for the privilege of accommodating Overweight Aircraft and not investing the millions of dollars necessary to ensure safe

accommodation of such aircraft, the County, since late 2016, has permitted Ross Aviation to accommodate hundreds of Overweight Aircraft on its premises.  (*Id.* ¶¶ 133-36.)  This places Million Air at an unfair disadvantage, in part because it enables Ross Aviation to offer operators of Overweight Aircraft less expensive fuel rates.  (*Id.* ¶¶ 133-34.)  Despite Million Air's repeated complaints to the County about this unfair treatment, the County has continued to allow Ross Aviation to breach its lease and accommodate Overweight Aircraft.  (*Id.* ¶¶ 135-36.)

## STANDARD OF REVIEW

Under Rule 12(b)(6), "[a] complaint will survive a motion to dismiss so long as it contain[s] sufficient factual matter . . . to state a claim for relief that is plausible on its face." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (internal quotation marks omitted). That assessment requires courts to "accept the factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Id.*  The purpose is to "test . . . the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits."  *Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original); *see also Ruiz v. Liberty Mut. Fire Ins. Co.*, No. 19 Civ. 4399 (VB), 2019 WL 7293377, at *2 (S.D.N.Y. Dec. 30, 2019) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (internal quotation marks and alteration omitted)).  A claim is plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal quotation marks omitted).

In deciding the motion, the Court considers facts stated on the face of the complaint, documents appended to the complaint, or documents incorporated by reference.  *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

9

<center>**ARGUMENT**</center>

**I.      Article 6 of the Lease Applies to the Modified Hangar Plans**

In its motion, the County first seeks dismissal of Million Air's contract claim pursuant to

Sections 6.2 and 6.5 of the Lease, arguing that neither section applies to the Modified Hangar

proposal.  As the unambiguous language in the Lease makes clear, this is simply wrong.

**A.      Section 6.2 Unambiguously Applies to the Modified Hangar**

Pursuant to Section 6.1 of the Lease, Million Air prepared certain "Plans" (as defined in

the Lease), which depicted the entire leased premises as they would appear with the Proposed

Improvements – including the new 50,000 square foot Completed Hangar, the upgrade to the

existing terminal, and the out-of-date Existing Hangar.  (*Id.* ¶¶ 44-45.)  The Plans are set forth in

Schedule C of the Lease.  Under Section 6.2, "[t]he Plans and the Proposed Improvements set

forth on Schedule 'C' are hereby approved by the County."  (*Id.* ¶ 46.)

Section 6.2 also allows for changes or modifications to *either* the Plans set forth in

Schedule C or to the Proposed Improvements, as follows:

> If . . . material changes or modifications are required to the Plans
> or the Proposed Improvements, Lessee . . . shall make such
> changes or modifications to the Plans (the "Modified Plans") and
> submit same to the County for the County's consent and approval,
> which consent and approval shall not be unreasonably withheld,
> delayed or conditioned. . . .  If the County shall disapprove of the
> Modified Plans, then such disapproval shall be in writing
> specifically identifying the County's objection and stating the
> reasons therefor and, thereafter, Lessee shall have the right to
> further amend the Modified Plans, taking into consideration the
> County's objection and the reasons therefor and re-submitting the
> Modified Plans to the County for its approval in accordance with
> this Section.

Perhaps recognizing that its refusal to approve the Modified Hangar does not pass muster

under Section 6.2's modification process, the County does not contend that its constantly shifting

response to Million Air's request for approval of the Modified Hangar was reasonable.  Instead,

<center>10</center>

purporting to rely on the "unambiguous" language of the Lease, the County argues that Section 6.2 does not apply at all.  (*See* Def. Br. (Dkt. 18) at 7-8.)  This argument is flatly contradicted by the County's acknowledgment, in its December 12, 2017 letter (Dkt. 17-2), that it was denying approval for the Modified Hangar plans "pursuant to Section 6.2 of the Lease."  Further, Million Air's Modified Hangar plans constitute "Modified Plans" within the meaning of the Lease, and therefore Section 6.2 applies.  As Million Air sufficiently alleges the County breached Section 6.2 by unreasonably withholding approval of the Modified Hangar plan, the County's motion to dismiss the contract claim must be denied.

First, the County incorrectly asserts that "Modified Plans" under Section 6.2 can only be modifications to the *new structures* (*i.e.*, the Completed Hangar and modernized terminal) constituting the Proposed Improvements.  That is an unduly constrained reading of Section 6.2 and improperly conflates "Plans" and "Proposed Improvements" – two separate capitalized terms defined in Section 6.1 of the Lease.

The "Plans," set forth in Schedule C to the Lease, depict the entire leased premises as they would appear once the Proposed Improvements were completed, *i.e.*, both the structures Million Air would build or expand (*i.e.*, the Completed Hangar and the terminal)[7] *and* the Existing Hangar that was already present on the site.  In contrast, the Proposed Improvements cover only the new construction specifically approved under the Lease.

The County does not and cannot deny that Section 6.2 explicitly contemplates "material changes or modifications" to the "Plans *or* the Proposed Improvements" (emphasis added).  Nor can it deny that Million Air's plans for the Modified Hangar, which would expand the Existing

---

[7] As explained above, *supra* note 2, the hangar referred to herein as the "Completed Hangar" was not yet constructed at the time the Lease was entered into but has been completed since the execution of the Lease.

Hangar, constitutes a modification to the "Plans," which cover the entire premises.  Because the

Modified Hangar would change or modify the Plans, it is covered by Section 6.2, and therefore

the Complaint states a claim for breach of that provision.

Second, Section 4.2 of the Lease, which the County essentially ignores in its papers,

makes it clear that the Modified Hangar plans constitute a modification to the Plans and so are

covered by Section 6.2.  Section 4.2 sets forth a rent formula for the portion of Million Air's

FBO that accommodates heavy aircraft and provides in relevant part:

> In the event Lessee, subject to the County's consent and approval
> *as specified in Article 6 hereof*, constructs Fixed Based Operation
> improvements *in addition to* the Proposed Improvements specified
> in Schedule "C" attached hereto, Lessee shall also pay the then-
> current annual rent rate for the additional acreage required for such
> improvements. {Example: Lessee *builds additional hangars* on 3
> more acres. Annual rent in connection with the Fixed Base
> Operation is at that time $1.95 per square foot. Annual rent in
> connection with the Fixed Base Operation will be calculated on 12
> acres total}. [Emphases added.]

(*Id.* ¶¶ 54-56.)  Therefore, Section 4.2 makes clear that Million Air may build "improvements" to

its FBO "in addition to" the "Proposed Improvements," that those additional improvements can

take the form of "additional hangars," and that these *additional* improvements are subject to the

County's approval "as specified in Article 6" (*i.e.*, Section 6.2).

The County attempts to end-run the clear language of Section 4.2 by positing that it is

"part of an entirely separate Lease article" (Def. Br. at 10).  That position is contrary to accepted

contractual interpretation, and the Court can swiftly reject it.  *See Law Debenture Trust Co. of*

*New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("Where the parties dispute

the meaning of particular contract clauses, the task of the court is to determine whether such

clauses are ambiguous when read in the context of the entire agreement, and where consideration

of the contract as a whole will remove the ambiguity created by a particular clause, there is no

ambiguity." (internal citations and quotation marks omitted)).

The County also makes the paltry argument that Section 4.2 "may suggest that the parties contemplated adding additional hangars" but contends that would be "through a Lease amendment at a later date." (Def. Br. at 10.) But Section 4.2 says nothing about a lease "amendment." Instead, it specifically refers to "improvements" – including "additional hangars" – that would be "subject to the County's consent and approval *as specified in Article 6*" of the Lease itself.

Finally, the County asserts that the "modifications" covered by Section 6.2 must be limited to "small changes." (*See* Def. Br. at 9.) Once again, the unambiguous language of the Lease dictates otherwise. Section 5.5 of the Lease defines "improvements" to include "major" "construction" that might be built "[f]ollowing the completion of the Proposed Improvements." Thus, when Section 4.2 refers to "improvements *in addition to* the Proposed Improvements," which would be subject to the Article 6 approval process, it is not referring to small fixes. Instead, it means "major" construction – for example, new hangars.

Third, the County conclusorily argues that Section 6.2 does not apply because Million Air never demonstrated that the Modified Hangar was "required" by the County or "some regulatory authority." (*See* Def. Br. at 9.) The County's reliance on the word "required" in Section 6.2 is misplaced and its position should be rejected by the Court.

While Section 6.2 does state that Million Air may submit "Modified Plans" to the County where "material changes or modifications are required" to the Plans for the Proposed Improvements, nowhere does the Lease state that a modification is only "required" for purposes of Section 6.2 when demanded by the County or some other government agency. Indeed, the term "required" is not defined in the Lease at all. More importantly, the County's interpretation

makes no sense.  The County is effectively arguing that it is Million Air's responsibility to guess which modifications the *County* (or some other governmental body) might require and then to propose such modifications to the County.  This is not what the parties intended – if the County requires a change, the County would of course be the party to inform Million Air, not the other way around.  Similarly, it would not make any sense for the Lease, under Section 6.2, to give the County the power to deny approval to a modification that the County itself "requires."

Instead, the most logical reading of Section 6.2's use of the word "required" is that it contemplates a situation in which either Million Air or the County wishes to effectuate a material change to the premises that requires a change to the existing Plans or Proposed Improvements.[8] For example, Million Air wished to construct the Modified Hangar to, among other reasonable goals, create jobs and reduce ferry flights, and thus proposed the modifications to the Plans "required" to effectuate that project.  The County was then obligated to approve the proposed modifications or, alternatively, to articulate a reasonable basis for refusing to do so, thereby giving Million Air the opportunity to amend its proposal to meet the County's reasonable objections.

In any event, the Court need not definitively interpret the word "required" at this stage. In light of Section 4.2, it is clear that "additional hangars" may be "required" changes to the Plans under Section 6.2, and thus the Court should reject the County's argument that the Modified Hangar is unambiguously *not* "required."[9]

---

[8] This interpretation is consistent with either the definition of the word "required" as meaning "essential or indispensable" – that is, in this case, a change to the Plans was "essential" to achieve some reasonable goal – or with the definition of "required" as meaning simply "desired."  *See* Google search results for "required definition."

[9] The County also points out that Section 6.2 only applies to "material" modifications and attempts to equate the word "material" with the word "required."  But this is not a serious argument.  The use of the

**B.      Section 6.5 Unambiguously Applies to the Modified Hangar**

As with Section 6.2, the County incorrectly argues that Section 6.5 of the Lease does not apply to the Modified Hangar plans.  (*See* Def. Br. at 11-12.)  In Section 6.5, the County agreed that, "if requested" by Million Air, it would "assist and cooperate with [Million Air] in good faith" in obtaining "any and all approvals" required from governmental authorities, whether in connection with the Proposed Improvements *or* any "Modified Plans" permitted under Section 6.2.  The County erroneously argues that this provision only requires the County to assist in obtaining regulatory approvals for the Proposed Improvements.  (*See* Def. Br. at 12.)  Section 6.5, however, explicitly applies to those improvements *and* any Modified Plans (*see* Lease § 6.5) – which, as set forth above, may include plans for "additional hangars" like the Modified Hangar proposed by Million Air (*see id.* §§ 4.2, 6.5).

The County next argues that, if Section 6.5 is applicable to the Modified Hangar plans – which it is – the County did not violate the provision.  (*See id.* at 13.)  Here, the County attempts to obfuscate by arguing that its "position" as to whether the FAA required a stormwater system for the Proposed Improvements was "irrelevant."  (*Id.*)  But this misses the point.  The County did not simply provide its position or state an opinion.  Instead, the County – which was the entity responsible for submitting Airport plans for FAA approval – *instructed* Million Air to prepare a stormwater mitigation plan covering both the Proposed Improvements and the Modified Hangar for submission *by the County* to the FAA.  (*See* Compl. ¶¶ 87-88, 92-94, 101, 115.)  The County also *instructed* Million Air to complete construction of the Proposed Improvements without a stormwater system.  (*Id.*)  Then, when the County realized it had run

---

word "material" simply means that the County's approval of modifications is unnecessary where such modifications are not "material," *i.e.*, where they are insignificant.

afoul of the Airport's federal regulator, it blamed Million Air for its "failure" to construct a stormwater system for the Proposed Improvement alone and forced it to tear up portions of the Proposed Improvements in order to appease the FAA.  (*Id.* ¶¶ 103-15.)  This was the opposite of "assist[ing] and cooperat[ing] with [Million Air] in good faith" in obtaining regulatory approvals for the Modified Plans, as required by Section 6.5.  A final determination as to whether the County in fact violated Section 6.5 will require a full evidentiary record, but Million Air has sufficiently alleged in the Complaint that the County violated that provision.

### C.    To the Extent the Court Finds Any Ambiguity in the Lease, It Must Allow the Parties to Develop a Full Evidentiary Record

While the Court can and should decide the applicability of Sections 6.2 and 6.5 in Million Air's favor based on the clear terms of the Lease, in the event the Court determines the Lease is ambiguous, any ruling on the breach of contract claim must await the development of an evidentiary record.  *See Starter Corp. v. Converse, Inc*., 170 F.3d 286, 295 (2d Cir. 1999).  In its Motion to Dismiss, the County argues that, by referencing the parties' "understanding" that the Modified Hangar would ultimately be built, Million Air has "[i]mplicitly acknowledge[ed]" that Section 6.2 does not apply.  (*See* Def. Br. at 9.)  Not only is this argument nonsensical, it is impermissible on a Rule 12(b)(6) motion to dismiss because any examination into the parties' "understanding" would require the admission of parol evidence.  *See Starter Corp.*, 170 F.3d at 295 ("Where the language in an agreement is susceptible to differing interpretations, each of which may be said to be as reasonable as another, then extrinsic evidence of the parties' intent is properly admissible" (internal quotation marks and alternations omitted).)  Thus, even if the Court finds that the Lease provisions are ambiguous, it should deny the County's motion so that a full evidentiary record can be developed.  *See GeigTech East Bay LLC v. Lutron Electronics Co., Inc.*, 352 F. Supp. 3d 265, 278 (S.D.N.Y. 2018) ("fact-intensive" questions should not be

disposed of at the motion to dismiss stage); *Icahn School of Medicine at Mount Sinai v. Health Care Serv. Corp.*, 234 F. Supp. 3d 580, 585 (S.D.N.Y. 2017) (same).

## II.     The Declaratory Judgment Claim Is Not Duplicative

The County next argues that Million Air's declaratory judgment claim should be dismissed as duplicative.  (*See* Def. Br. at 14-15.)  Once again, the County is incorrect.

As an initial matter, the County acknowledges that "[a] declaratory judgment claim may be entertained '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  (Def. Br. at 14 (quoting *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)).)  That is precisely the purpose of the declaratory judgment sought here.  The parties dispute whether Sections 6.2 and 6.5 apply to Million Air's proposed plans for the Modified Hangar.  A declaratory judgment would be useful in "clarifying" that issue, thereby "afford[ing] relief from . . . uncertainty."

Contrary to the County's argument, the declaratory judgment claim is not duplicative of the breach of contract claim, because the two are not coextensive.  Million Air, in its declaratory judgment claim, seeks a ruling as to whether Sections 6.2 and 6.5 of the Lease apply to the Modified Hangar plans.  That determination can be made based solely on the unambiguous terms of the Lease.  In contrast, the breach of contract claim requires a determination as to whether the County breached those provisions by unreasonably withholding approval of the Modified Hangar plans.  Reasonableness, in turn, is a factual issue that cannot be determined at the pleading stage. *See Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 306 (S.D.N.Y. 2016).  Because the declaratory judgment claim is thus not duplicative of the breach of contract claim, the Court should deny the County's motion to dismiss the declaratory judgment claim.

III.    **The County Violated the Covenant of Good Faith and Fair Dealing**

A.      **Million Air Sufficiently Alleges Its Good Faith and Fair Dealing Claim**

The County first erroneously argues that Million Air has insufficiently pleaded its claim
for breach of the covenant of good faith and fair dealing.  (*See* Def. Br. at 17-19.)  The covenant
of good faith and fair dealing is implied in all contracts and "'embraces a pledge that neither
party shall do anything which will have the effect of destroying or injuring the right of the other
party to receive the fruits of the contract.'"  *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir.
2011) (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153
(2002)).  Significantly, "'[w]here the contract contemplates the exercise of discretion, this pledge
includes a promise not to act arbitrarily or irrationally in exercising that discretion.'"  *Id.*
(quoting *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 389 (1995)); *see also Hoffman v. Nutmeg
Music Inc.*, No. 17 Civ. 01848 (VLB), 2018 WL 4471708, at *6 (D. Conn. Sept. 18, 2018)
("Courts in this circuit continue to hold that the covenant of good faith and fair dealing prohibits
a party from exercising its discretion in bad faith.").

Here, a review of the Complaint demonstrates that Million Air's claim is predicated on
two factual bases, both of which are more than sufficient to state a claim.

First, the County initially instructed Million Air to prepare a stormwater plan for the
Proposed Improvements *combined with* the Modified Hangar and to proceed with completing the
Proposed Improvements *without* a stormwater system, but then reversed itself in bad faith and
forced Million Air to build a stormwater system for the Proposed Improvements alone.  (Compl.
¶¶ 87-88, 92-94, 101-15.)  This forced Million Air to tear up already constructed portions of the

18

Proposed Improvements, at significant cost.  (*Id.* ¶¶ 114-16.)[10]  Second, the County allowed

Million Air's competitor, Ross Aviation, to accommodate Overweight Aircraft in violation of its

lease, thereby permitting Ross Aviation to unfairly compete with Million Air.  (*Id.* ¶¶ 131-36.)

Both sets of allegations support Million Air's claim that the County breached the

covenant of good faith and fair dealing, because both involve injury to Million Air's right to

"receive the fruits" of the Lease.  *See Fishoff*, 634 F.3d at 653.  Million Air entered into the

Lease to operate an FBO and profit from that operation.  Indeed, these straightforward goals are

set forth in Article 3 of the Lease (entitled "Use of the Premises"), which articulates the Lease's

purpose – namely, Million Air's "operation" of an FBO at the Airport for both heavy and light

aircraft, such operation to include the sale of fuel to customers, repair of customers' aircraft, and

hangaring of such aircraft.  (*See* Lease §§ 3.1 & 3.2.)  *See Southern Telecom Inc. v. ThreeSixty

Brands Group, LLC*, No. 20 Civ. 2151 (LJL), 2021 WL 621235, at *4 (S.D.N.Y. Feb. 17, 2021)

(upholding breach of good faith and fair dealing claim based on defendant's alleged frustration

of plaintiff's "ability to perform under the Agreement," including plaintiff's ability, as set forth

in a particular provision of the contract, to "use its best efforts to exploit the rights herein granted

. . . and to sell the maximum quantity" of products covered by the contract).

Million Air also entered into the Lease with a reasonable expectation that it would be

treated fairly vis-à-vis its competitors.  This is manifest in Section 11.1, under which the County

"agrees that [applicable] rules and regulations shall be promulgated and enforced in a non-

discriminatory manner."  (Lease § 11.1.)  Million Air would not have entered into the Lease had

---

[10] In its motion, the County claims that it did not act in bad faith because it was "consistent for more than four years" in repeatedly refusing to approve the Modified Hangar.  (*See* Def. Br. at 17-18.)  This argument ignores the County's repeated assurances that it supported the eventual construction of the Modified Hangar and, more to the point, its reversal as to the stormwater system, which the County initially told Million Air *not to build* until the Modified Hangar could be constructed.

it known the County would frustrate its ability to profitably run its FBO or treat Million Air

unfairly vis-à-vis its competitors.  *See Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d

415, 429 (S.D.N.Y. 2020) (upholding good faith and fair dealing claim where, in the absence of

plaintiff's "reasonable expectations," which defendant allegedly frustrated, plaintiff would not

have contracted with defendant).[11]

Both the County's bad-faith reversal as to the stormwater system and its unfair favoritism

toward Ross Aviation deprived Million Air of the fruits of the Lease that Million Air reasonably

expected.  As to the stormwater system, the County's conduct caused Million Air to tear up

portions of the Proposed Improvements it had already built.  This obviously frustrated Million

Air's ability to profitably run its FBO.  The same is true for the County's favoritism toward Ross

Aviation, which undercut Million Air's ability to profit from accommodating Overweight

Aircraft and selling fuel for such aircraft.  Courts have repeatedly upheld good faith and fair

dealing claims where plaintiffs have alleged that defendants' conduct deprived them of their

ability to profit from a contract or unfairly favored competitors.[12]

---

[11] The County notes that the Lease does not give Million Air the right to be free of competition.  (*See* Def. Br. at 19.)  However, the County's implied covenant of good faith and fair dealing in the Lease entails an obligation not to subject Million Air to *unfair* competition caused by the County.  The County also points out that Million Air is not a third-party beneficiary to the lease between Ross Aviation and the County. (*See id.*)  Again, this is true but irrelevant.  Million Air is asserting a claim based on the implied covenants contained in its own Lease, not a third-party beneficiary claim based on Ross Aviation's lease.

[12] *See, e.g.*, *Southern Telecom Inc.*, 2021 WL 621235 (S.D.N.Y. Feb. 17, 2021) (upholding breach of good faith claim where defendant refused to approve plaintiff's products under licensing agreement, with the intention of benefiting plaintiff's competitor); *Valley Stream Foreign Cars, Inc. v. American Honda Motor Co., Inc.*, 209 F. Supp. 3d 547, 554 (E.D.N.Y. 2016) (upholding dealership's good faith and fair dealing claim against distributor for failing to enforce anti-wholesaling policy against plaintiff's competitors, because distributor's failure to enforce "prevented plaintiff from exercising its right to earn profits from the sale of Honda vehicles"); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) (upholding breach of good faith claim against Lamborghini, which allowed a dealer to operate near the plaintiff dealer, where plaintiff pled that, given the unique market for these luxury cars, proximity of the third-party dealer would unfairly reduce its market share); *see also Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) ("[W]e have little difficulty holding that the complaint adequately asserts that the agreements, if not expressly, at least implicitly prohibit AP

Next, the County erroneously argues that Million Air has inadequately alleged the County's improper intent in taking the actions alleged.  In particular, the County claims that Million Air has failed to allege that the County's actions were "fraudulent, deceitful, or dishonest."  (*See* Def. Br. at 16, 17, 19.)  First, Million Air *has* alleged this.  The Complaint states that the County, through its years of stringing Million Air along and assuring Million Air that it would ultimately support the Modified Hangar, never intended to approve of the hangar. (*See* Compl. ¶ 165.)  More importantly, there simply is no requirement that Million Air allege or prove "fraudulent, deceitful, or dishonest" conduct to state a breach of the covenant of good faith claim.  The County takes this language from *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465 (2d Cir. 1999) – a case that *does not involve* the covenant of good faith and fair dealing at all. Instead, the quoted language relates to a claim of breach of the duty of "fair representation" under the National Labor Relations Act.  *See id.* at 472.[13]

While Million Air, to prevail on its good faith and fair dealing claim, will ultimately need to *prove* that the County acted with some improper motive or state of mind – *e.g.*, bad faith – Million Air need not make any more detailed allegations at the pleadings stage.  Indeed, this is demonstrated by the cases upon which the County itself relies.  For example, the County cites *Zilg v. Prentice-Hall, Inc.*, 515 F. Supp. 716, 719 (S.D.N.Y. 1981), for the proposition that, because of the improper-motive requirement, a party claiming breach of the covenant of good faith and fair dealing has a "substantial burden."  (Def. Br. at 16.)  But the full quote from *Zilg* is

---

from licensing or selling Plaintiffs' photographs [to a third party] in a way that benefits AP, but yields little to no value for Plaintiffs.").

[13] Moreover, the Second Circuit in *Sim* rejected the NLRA claim based on the lack of a causal connection between the alleged conduct and the alleged harm, "regardless of whether the Union's alleged misconduct rises to the level of fraudulent, deceitful or dishonest action."  *Sim*, 166 F.3d at 472.  Thus, the language the County quotes, in addition to being inapposite, is dicta.

as follows: "The burden plaintiff must meet here to prove that the defendant failed to act in good

faith is substantial.  However, intent can rarely be established by direct evidence, and must often

be proved circumstantially and by inference.  *Intent is therefore peculiarly inappropriate to be*

*decided on a motion for summary judgment*."  515 F. Supp. at 719 (emphasis added).  Thus, *Zilg*

demonstrates that a breach of the covenant of good faith claim should not be dismissed based on

inadequate evidence of the defendant's motivation *even at the summary judgment stage* – much

less at the pleading stage.  *See also Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667 (LMM),

2008 WL 4866054, at *8 (S.D.N.Y. Nov. 6, 2008) (noting, in upholding good faith and fair

dealing claim, that the Second Circuit has held "several times" that even summary judgment

(much less dismissal on the pleadings) is "ordinarily inappropriate where intent and state of mind

are at issue" (internal quotation marks omitted)).[14]

## B. The Good Faith and Fair Dealing Claim Is Not Duplicative

Finally, the County argues that Million Air's good faith and fair dealing should be

dismissed as duplicative of its breach of contract claim.  (*See* Def. Br. at 17.)  This is incorrect:

the two claims are distinct, with respect to both the underlying facts and damages.

Even where a breach of the duty of good faith claim is "obviously related" to a breach of

contract claim, it should not be dismissed as duplicative where it is based on "distinct" facts.  *See*

*Global Payroll Investors LLC v. Immedis, Inc.*, No. 20 Civ. 4508 (JS) (AYS), 2021 WL

---

[14] The other cases the County cites (*see* Def. Br. at 16, 18) are inapposite.  *See, e.g.*, *Schweizer v. Sikorsky Aircraft Corp.*, No. 10 Civ. 6547 (MAT), 2014 WL 5460504 (W.D.N.Y. Oct. 27, 2014) (dismissing breach of good faith claim on summary judgment motion, not on the pleadings); *Charter Contracting Co., LLC v. Orange & Rockland Utilities, Inc.*, No. 20 Civ. 795 (VB), 2020 WL 7774337, at *6 (S.D.N.Y. Dec. 30, 2020) (holding that allegations as to intent were too vague to *distinguish* good faith claim from breach of contract claim, but *not* holding that improper motive must be pleaded with specificity to adequately *allege* a good faith and fair dealing claim); *Williams v. New York City Dep't of Correction*, No. 19 Civ. 5200 (RA), 2021 WL 848709 (S.D.N.Y. Mar. 5, 2021) (no good faith and fair dealing claim in case); *T.P. v. Elmsford Union Free Sch. Dist.*, No. 11 Civ. 5133 (VB), 2012 WL 860367 (S.D.N.Y. Feb. 27, 2012) (same).

3501377, at *4 (E.D.N.Y. July 13, 2021); *see also Stop & Shop Supermarket Co. LLC v. Goldsmith*, No. 10 Civ. 3052 (VB), 2013 WL 3179501, at *8-9 (S.D.N.Y. June 24, 2013) (upholding breach of good faith and fair dealing claim based on facts "distinct" from those underlying contract claim).  This is particularly true, as this Court has found, where the breach of covenant claim entails additional damages.  *See Ruiz*, 2019 WL 7293377, at *2.

Here, with respect to the County's unfair favoritism toward Ross Aviation, Million Air does not allege that this violated any specific provision of the Lease – only that it violated the covenant of good faith and fair dealing implied in the Lease.  This portion of Million Air's breach of covenant claim is therefore not duplicative of the breach of contract claim.

As to the County's conduct regarding the stormwater system, Million Air does not dispute that it relates to the breach of contract claim, in that Million Air alleges the County's reversal with respect to the stormwater system was one of its many unreasonable bases for refusing to approve the plans for the Modified Hangar under Section 6.2.  However, the good faith and fair dealing claim also has a separate basis: in addition to constituting an unreasonable ground for denying approval of the Modified Hangar plans, the County's reversal regarding the stormwater system was *itself* a demonstration of bad faith.  Most significantly, that reversal caused distinct damages: namely, the costs and business interruption caused by tearing up the already constructed Proposed Improvements, which Million Air was forced to incur when the County reversed course and directed Million Air to construct a stormwater system for the Proposed Improvements alone.  *See Ruiz*, 2019 WL 7293377, at *2 (this Court rejected defendant's argument that breach of covenant claim was duplicative of breach of contract claim because plaintiff sought to recover "additional" damages, including remediation); *see also Stop & Shop Supermarket Co. LLC*, 2013 WL 3179501, at *8-9 (this Court held that, even if breach of

covenant claims "depend in part" on the same facts as breach of contract claims, where they *also* depend on distinct facts, they are not duplicative); *Sandler v. Montefiore Health Sys., Inc.*, No. 16 Civ. 2258 (JPO), 2018 WL 4636835, at *16 (S.D.N.Y. Sept. 27, 2018) (upholding good faith and fair dealing claim where "the alleged conduct underlying the implied covenant claim is not coextensive with the conduct underlying the breach of contract claim").

Moreover, while the plain terms of the Lease make clear that Sections 6.2 and 6.5 apply to Million Air's proposed plans for the Modified Hangar, at the pleading stage Million Air may plead its breach of the covenant of good faith and fair dealing claim in the alternative, particularly given the County's position that Sections 6.2 and 6.5 are inapplicable. *See Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings*, LLC, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) ("[W]here the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative." (internal quotation marks and citations omitted)); *see also Stanley*, 466 F. Supp. 3d at 430 (breach of the duty of good faith and fair dealing claim should be upheld where the "meaning of the parties' contract has yet to be determined," such that "it is too soon to address" whether the good faith and fair dealing claim is "duplicative" of the breach of contract claim).

Indeed, the County's entire course of conduct, during which it arbitrarily asserted bad-faith and inconsistent positions with respect to the Modified Hangar and forced Million Air to jump through numerous hoops – including drafting an amended lease, preparing a stormwater plan for the Proposed Improvements combined with the Modified Hangar, and commissioning an independent study of flight reductions caused by the Modified Hangar – without ever intending to approve of the Modified Hangar, is a classic example of bad faith. *See Fishoff*, 634 F.3d at 653 (covenant of good faith and fair dealing prohibits contracting parties from exercising

24

discretion arbitrarily).

In sum, Million Air has sufficiently alleged a basis for its breach of the duty of good faith and fair dealing claim that is distinct from its breach of contract claim.  Insofar as there is any overlap between the two claims, they may be pleaded in the alternative at this stage of the proceedings.

## CONCLUSION

The Court should deny the County's Motion to Dismiss in its entirety.

Dated:  White Plains, New York
         September 3, 2021

<div style="margin-left: 40%;">

Respectfully submitted,
YANKWITT LLP

*/s/ Russell M. Yankwitt*
Russell M. Yankwitt
Ross E. Morrison
Benjamin C. Fishman
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:    (914) 686-1500
Fax:    (914) 487-5000
russell@yankwitt.com
ross@yankwitt.com
bfishman@yankwitt.com

CUDDY & FEDER LLP

Jordan M. Brooks
Brendan M. Goodhouse
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel.:    (914) 761-1300
Fax:    (914) 761-5372
jbrooks@cuddyfeder.com
bgoodhouse@cuddyfeder.com

*Counsel for Plaintiff*

</div>

25