```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WHITE PLAINS AVIATION            :
PARTNERS, LLC d/b/a              :
Million Air White Plains,        :
                                 :          21-CV-5312 (VLB)(JCM)
            Plaintiff,           :
                                 :
    -against-                    :
                                 :
THE COUNTY OF WESTCHESTER,       :
                                 :
            Defendant.           :
-------------------------------------------------------x
```

# DEFENDANT'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# MOTION TO DISMISS

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

REPLY ARGUMENTS .................................................................................................................1

I.    As a matter of law, Westchester did not breach
Section 6.2 of the Lease ......................................................................................................1

    A.  Neither the "Plans" nor the "Proposed Improvements"
encompass the 80,000-square-foot Replacement Hangar ..........................................2

    B.  The Section 6.2 breach claim is not salvaged by Section 4.2's
annual rent rate example ............................................................................................3

    C.  Plaintiff's interpretation of Section 6.2 defies fundamental
principles of contract law and common sense ...........................................................5

II.   As a matter of law, Westchester did not breach
Section 6.5 of the Lease ......................................................................................................6

III.  The declaratory judgment claim should
be dismissed as duplicative .................................................................................................7

IV.  Both "good faith and fair dealing"
claims should be dismissed .................................................................................................8

    A.  The "good faith and fair dealing claim" is duplicative
of the breach claim with respect to the
Replacement Hangar allegations ................................................................................8

    B.  The Ross Aviation allegations fail to
state a claim under any theory of liability .................................................................9

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

*Bristol-Myers Co. v. Picker*,
    302 N.Y. 61 (N.Y. 1950) ................................................................................................. 9-10

*Ccm Rochester, Inc. v. Federated Inv'rs, Inc.*,
    234 F. Supp. 3d 501 (S.D.N.Y. 2017). ................................................................................. 9

*Express Indus. & Terminal Corp. v. N.Y. State DOT*,
    93 N.Y.2d 584 (N.Y. 1999). ................................................................................................. 4

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11-CV-4491 (PFF),
    2013 U.S. Dist. LEXIS 47608 (S.D.N.Y. Mar. 30, 2013). .................................................... 8

*Gas Nat., Inc. v. Iberdrola, S.A.*,
    33 F. Supp. 3d 373 (S.D.N.Y. 2014) .................................................................................... 9

*Harty v. West Point Realty, Inc.*,
    477 F. Supp. 3d 163 (S.D.N.Y. 2020). ................................................................................. 7

*Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*,
    889 F.2d 1274 (2d Cir. 1989). .............................................................................................. 7

*Optanix, Inc. v. Alorica Inc.*, No. 20-CV-9660 (GHW), 2021 U.S. Dist. LEXIS 125808
    (S.D.N.Y. July 6, 2021) ........................................................................................................ 8

*Paul v. Bank of Am. Corp.*, No. 09-CV-1932 (ENV), 2011 U.S. Dist. LEXIS 15569
    (E.D.N.Y. Feb. 14, 2011)...................................................................................................... 9

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
    172 F. Supp. 3d 700 (S.D.N.Y. 2016). ................................................................................. 8

*Schron v. Troutman Sanders LLP*,
    20 N.Y.3d 430 (N.Y. 2013). ............................................................................................. 2, 4

*Suthers v. Amgen Inc.*,
    441 F. Supp. 2d 478 (S.D.N.Y. 2006) ............................................................................... 8-9

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-CV-8528 (PGG),
    2020 U.S. Dist. LEXIS 92744 (S.D.N.Y. May 27, 2020) ..................................................... 5

*Tribie v. Parwanta*, No. 10-CV-6016 (VB), 2012 U.S. Dist. LEXIS 12988
    (S.D.N.Y. Jan. 26, 2012)..................................................................................................... 10

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019) ................................................................................................. 10

*V.E.C. Corp. v. Hilliard*, No. 10-CV-2542 (VB),
    2011 U.S. Dist. LEXIS 152759 (S.D.N.Y. Dec. 13, 2011) ................................................... 9

**PRELIMINARY STATEMENT**

The essence of this lawsuit is set forth in Plaintiff's assertion that "the parties agreed and understood that Million Air, with the County's support, would construct the Modified Hangar[1] at a future date." (Opp'n 4.) Tellingly, Plaintiff does not cite the Lease itself in support of this bald assertion—because it can't. The new 50,000-square-foot hangar may have been "explicitly authorized in the Lease" (Opp'n 4 n.2), but the Replacement Hangar was not.

The law is clear: claims of an unwritten "agreement" or "understanding" cannot add terms to a written real property agreement such as the Lease, especially where, as here, that agreement was negotiated and drafted by sophisticated, represented entities. And absent a legal obligation to approve the Replacement Hangar, claims that Westchester was "unreasonable" in refusing to grant such approval are irrelevant as a matter of law.

The arguments in support of Plaintiff's secondary claims deserve short shrift: its declaratory judgment claim is clearly duplicative of its breach of contract claim, as is the portion of its good faith and fair dealing claim addressing the Replacement Hangar. Plaintiff's cursory allegations regarding its competitor, Ross Aviation, do not even remotely state a claim for relief.

**REPLY ARGUMENTS**

**I.    As a matter of law, Westchester did not breach Section 6.2 of the Lease.**

Section 6.2 opens by stating, "The Plans and the Proposed Improvements set forth on Schedule 'C' are hereby approved by the County." (Lease 21.) Try as it might, Plaintiff cannot insert the phrase, "including the plan to replace the Existing Hangar" into that sentence, or insert its plans for the Replacement Hangar into Schedule 'C.' Nor can Plaintiff escape the effect of

---

[1] Plaintiff continues to refer to the 80,000-square-foot hangar, "which [it] has proposed to replace the Existing [24,000-square-foot] Hangar" (Opp'n 4 n.2), as the "Modified Hangar." Westchester will continue to use the more accurate term "Replacement Hangar."

1

the merger clause (Lease 82), which defeats any attempt to vary the Lease's clear terms via allegations of an unwritten "understanding" to build the Replacement Hangar.² *See Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (N.Y. 2013).

Instead, Plaintiff implicitly asks the Court, in each of its arguments, to ignore the following, undisputed fact: in drafting the Lease, Westchester approved Plaintiff's plans to 1) construct a new 50,000-square-foot hangar and 2) refurbish the terminal, but did ***not*** approve its plans to 3) replace the existing 24,000-square-foot hangar or 4) construct additional hangars. (*See* Compl. ¶¶ 37, 40.)  As set forth in greater detail below, the Court should reject Plaintiff's arguments, and dismiss the Section 6.2 breach claim as a matter of law.

    **A.**    **Neither the "Plans" nor the "Proposed Improvements" encompass the 80,000-square-foot Replacement Hangar.**

Plaintiff first emphasizes the supposed distinction, in Section 6.2, between "Plans" and "Proposed Improvements." (Opp'n 11.)  There is no meaningful distinction, however; the "Plans" are simply a graphic depiction *of* the "Proposed Improvements. (*See* Lease 21 ("The Plans shall have sufficient detail to show the design, character and appearance of the Proposed Improvements").)  Indeed, Schedule 'C' of the Lease is entitled "PLANS FOR PROPOSED IMPROVEMENTS" (capitalization in original), and each of the images therein are labeled "Proposed Improvements."  Plaintiff itself uses "Plans" and "Initial [*i.e.* Proposed] Improvements" interchangeably.  (*See* Compl. ¶¶ 44, 49.)

Regardless, any distinction between "Plans" and "Proposed Improvements" makes no difference, because neither term encompasses the Replacement Hangar.  The "Proposed Improvements cover [] the new construction specifically approved under the Lease," to wit: the

---

² Plaintiff does not address the County's merger clause argument.  (ECF No. 18, at 10-11.)

2

50,000-square-foot hangar and terminal refurbishment.  (Opp'n 11; *see also* Compl. ¶ 40.)  "The 'Plans,' set forth in Schedule C to the Lease, depict the entire leased premises as they would appear once the Proposed Improvements were completed."  (Opp'n 11.)  Plaintiff notes that these "Plans" depict the "Existing Hangar that was already present on the site."  (*Id.*)  Precisely.  They do *not* depict the Replacement Hangar, which Plaintiff had proposed to *replace* the Existing Hangar.  (*See* Opp'n 4 n.2; *see also* Lease 21 and Schedule 'C.')

Stymied by the clear meaning of "Plans" in Section 6.2, Plaintiff resorts to another sleight-of-hand: it conflates the 6.2 "Plans" with "Million Air's plans [lower case] for the [Replacement] Hangar."  (Opp'n 11.)  Once again, however, "Plans" is a defined term encompassing two specific projects—neither of which is the proposed Replacement Hangar.

### B.  The Section 6.2 breach claim is not salvaged by Section 4.2's annual rent rate example.

Plaintiff does not allege that Westchester breached Section 4.2 of the Lease.  Instead, it argues that Section 4.2's use of the example "additional hangars on 3 more acres" (Lease 13) to illustrate the annual rent rate, combined with the use of the word "improvements" (*id.*), applies Section 6.2's approval process to any additional hangar it might propose (including the Replacement Hangar).  But "improvements" (lower case) cannot be conflated with "Proposed Improvements," which are two specific projects per Article 6.  (*See* Lease 21 and Schedule 'C'.)  Nor can Plaintiff import the definition of "improvements" from Section 5.5 to Section 4.2 (*see* Opp'n 13), because Section 5.5 only defines the use of the word "improvements" (lower case) from that point in the Lease "***hereinafter***."  (Lease 18 (emphasis added).)  The Section 4.2 language upon which Plaintiff relies simply indicates that ***any*** improvements on the leased property are subject to the owner's approval—a standard part of any long-term commercial lease.

3

Plaintiff argues that limiting Section 6.2's approval process to just the two "Proposed Improvements" is "unduly constrained."³ (Opp'n 11.) But "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State DOT*, 93 N.Y.2d 584, 589 (N.Y. 1999). The "Plans and the Proposed Improvements" to which Section 6.2's approval process applies are "sufficiently definite" (*id.*)—they are "set forth on Schedule C." (Lease 21.) Had the parties wished to apply 6.2's approval process to any hangars besides the new 50,000-square-foot hangar, they would have included those additional hangars in Schedule 'C' along with the 50,000-square-foot hangar. *Cf. Schron*, 20 N.Y.3d at 437 ("had these sophisticated business entities, represented by counsel, intended to make the … loan payment a condition … they easily could have included a provision to that effect").

As noted in Westchester's opening memorandum (ECF No. 18, at 10), the Section 4.2 example does suggest that the parties contemplated the possibility of additional hangars at some later date—via a Lease amendment. Plaintiff counters that Section 4.2 "says nothing about a lease 'amendment.'" (Opp'n 13.) But there is no reason it would—Article 4 of the Lease (which includes Section 4.2) is about rental rates.

---

³ Plaintiff makes much of the fact that in its December 2017 letter, Westchester disapproved the Replacement Hangar "pursuant to Section 6.2 of the Lease." (Opp'n 11.) But Westchester was responding to Plaintiff's own November 2017 proposal to build the Replacement Hangar, "pursuant to Section 6.2 of the Lease." (ECF No. 17-1.) Westchester's response noted, *inter alia*, that the Replacement Hangar was not "required" under Section 6.2. (ECF No. 17-2, at 1.)

Plaintiff also points to the fact that Westchester "does not contend that its constantly shifting response to Million Air's request for approval of the [Replacement] Hangar was reasonable" (Opp'n 10)—but then asserts that "[r]easonableness … is a factual issue that cannot be determined at the pleading stage." (*Id.* at 17.) This contradiction aside, whether Westchester "unreasonably" withheld approval is irrelevant. The 6.2 approval process was never triggered, because the request to build the Replacement Hangar fell outside the contours of Article 6.

### C. Plaintiff's interpretation of Section 6.2 defies fundamental principles of contract law and common sense.

Plaintiff suggests that Section 6.2's approval process broadly applies to any change or modification it might propose, across the "entire premises." (Opp'n 12.) Adopting this interpretation would require the Court to ignore the modifying phrase, "to the Plans or the Proposed Improvements," however. (Lease 21.) "[A] court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." *Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-CV-8528 (PGG), 2020 U.S. Dist. LEXIS 92744, at *13 (S.D.N.Y. May 27, 2020) (citations omitted).

Plaintiff similarly suggests that the Court should ignore the word "required" in 6.2, or at least broadly interpret it as "something Million Air desires to do." (*See* Opp'n 13-14.) But such a broad interpretation would allow Plaintiff to put forth a plan to replace the Existing Hangar with, say, a helipad (which would unquestionably be a "change or modification" to the premises depicted in Schedule C). If Westchester then failed, for whatever reason, to disapprove this plan in writing within 30 days, Plaintiff would "have the right to proceed." (Lease 21.) This was clearly not the parties' intent. (*See, e.g.*, Compl. ¶ 37.)

The most logical interpretation, given the discussion of "approvals" and "governmental authorities" on the following page (*see* Lease 22), is that "required" was meant to address "changes or modifications" that might be required by a regulatory agency such as the FAA. Regardless, Westchester agrees that "the Court need not definitively interpret the word 'required' at this stage" (Opp'n 14)—because Section 6.2 specifically applies its approval process to "material changes or modifications [that] are required ***to the Plans or the Proposed Improvements***." (Lease 21 (emphasis added).) Again, those do not encompass the Replacement Hangar.

**II.     As a matter of law, Westchester did not breach Section 6.5 of the Lease.**

Plaintiff's Section 6.5 breach claim is derivative of its 6.2 claim, and may be dismissed for the same reason: the "Proposed Improvements" for which the County must cooperate and assist in obtaining necessary approvals per 6.5 do not encompass the Replacement Hangar. The "Modified Plans" referenced in 6.5 do not encompass the Replacement Hangar either, under the definition set forth in 6.2. (*See* Lease 21 (defining "Modified Plans" as "changes or improvements [that] are required to the Plans or the Proposed Improvements").) As for the "Plans" referenced in 6.5, Plaintiff does not even allege that the County failed to assist in "construct[ing] the Proposed Improvements in accordance with th[os]e Plans."[4] (Lease 22.)

Plaintiff tries to salvage its 6.5 breach claim by reiterating its allegations about the FAA-required stormwater system. (Opp'n 15-16.) But these allegations do not state a claim. Section 6.5 required Westchester to cooperate, in good faith, in obtaining necessary approvals (Lease 22), and by Plaintiff's own admission, Westchester did just that. (*See* Compl. ¶ 86 ("the County … provided Million Air with guidance on how it might obtain certain required regulatory approvals").) Even assuming, *arguendo*, that this guidance did not lead directly to FAA approval, it simply does not follow that Westchester failed to cooperate in good faith. That it might have taken until late summer 2021 to satisfy the FAA (*see* Compl. ¶ 114) was surely frustrating—for both parties—but under the clear terms of the parties' agreement, ultimate responsibility for "obtaining the Approvals" lay with Plaintiff. (*See* Lease 22, 27.)

As a final note on breach, the Court should reject Plaintiff's new theory that the Lease is ambiguous (Opp'n 16), because it is asserted for the first time in opposition to this motion. *See*

---

[4] Both Proposed Improvements as set forth in Lease Article 6 and Schedule 'C' have been completed. (*See* Compl. ¶¶ 58, 59.)

6

*Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163, 169 (S.D.N.Y. 2020). Indeed, the underlying Complaint asserts that Sections 6.2, 4.2, and Schedule 'C' of the Lease are "***unambiguous***." (Compl. ¶ 143 (emphasis added).) To the extent the Court reaches this argument, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). As set forth above, Article 6's plain language limits its consent-and-approval process to the Proposed Improvements and the Plans for same.

**III.     The declaratory judgment claim should be dismissed as duplicative.**

Plaintiff's argument that its declaratory judgment claim is not duplicative of its breach claim (Opp'n 17) is belied by its own pleading. Under the "Declaratory Judgment" heading, Plaintiff alleges—citing Section 6.2— that "the County has breached the Lease by unreasonably withholding, delaying, or conditioning approval of the Modified Plans[.]" (Compl. ¶ 141.) Then, under the "Breach of Contract" heading, Plaintiff alleges that "[b]y unreasonably withholding, delaying, and conditioning its consent to and approval of Million Air's Modified Plans to construct the Modified Hangar, the County has breached its obligations under Section 6.2 of the Lease." (Compl. ¶ 151.) These claims are not just duplicative; they are identical.

Plaintiff argues that the two claims are "not coextensive" because the breach claim requires a determination as to whether Westchester "unreasonably" withheld approval for the Replacement Hangar. (Opp'n 17.) It does not. The Court can dismiss the breach claim solely on the ground that 6.2 does not encompass the Replacement Hangar. (*See* Part I, *supra*.) Resolving that issue necessarily resolves whether "the County has breached its obligations under Section 6.2 of the Lease"—the very declaratory relief that Plaintiff seeks. (*See* Compl. ¶ 145.) "Courts reject declaratory judgment claims when other claims in the suit will resolve the same

7

issues[.]" *Optanix, Inc. v. Alorica Inc.*, No. 20-CV-9660 (GHW), 2021 U.S. Dist. LEXIS 125808, at *9 (S.D.N.Y. July 6, 2021) (citation and internal quotation marks omitted).

## IV. Both "good faith and fair dealing" claims should be dismissed.

### A. The "good faith and fair dealing claim" is duplicative of the breach claim with respect to the Replacement Hangar allegations.

Where "claims for breach of contract and breach of the implied covenant of good faith and fair dealing both stem from the same alleged conduct," the latter "must be dismissed as duplicative of [the] breach of contract claim." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, No. 11-CV-4491 (PFF), 2013 U.S. Dist. LEXIS 47608, at *38-39 (S.D.N.Y. Mar. 30, 2013). Here, the fact that both claims "stem from the same alleged conduct," *i.e.*, the County's refusal to approve the Replacement Hangar, cannot seriously be disputed. (*Compare* Compl. ¶ 151 *with id.* ¶ 160.) That Plaintiff pled the duty of fair dealing claim "in the alternative" to its breach of contract claim (Opp'n 24) matters not. *See, e.g.*, *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 721 (S.D.N.Y. 2016).

Plaintiff argues that "the County's reversal regarding the stormwater system [for the Proposed Improvements] was *itself* a demonstration of bad faith." (Opp'n 23.) But "the implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Fillmore E. BS Fin. Subsidiary LLC*, 2013 U.S. Dist. LEXIS 47608, at *40. No "substantive provision" of the Lease obligated Westchester to run afoul of the FAA by approving construction about which the FAA had already expressed "significant concern"—especially after the FAA "strongly advised" Westchester that any further construction at the airport should be placed "on hold." (Compl. ¶¶ 107, 109.) *See Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity violates the implied

8

covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.").

### B. The Ross Aviation allegations fail to state a claim under any theory of liability.

Plaintiff argues that Westchester's "unfair favoritism towards Ross Aviation deprived Million Air of the fruits of the Lease that [it] reasonably expected," to wit: "profit from accommodating Overweight Aircraft." (Opp'n 20.) But the duty of good faith and fair dealing is not violated merely because an action "incidentally lessen[ed] the other party's expected benefit." *Ccm Rochester, Inc. v. Federated Inv'rs, Inc.*, 234 F. Supp. 3d 501, 508 (S.D.N.Y. 2017). More is required: a party "must plausibly allege some deliberate misconduct—arbitrary or capricious action taken out of spite or ill will or to back out of an otherwise binding contractual commitment." *Gas Nat., Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 384 (S.D.N.Y. 2014); *see also Paul v. Bank of Am. Corp.*, No. 09-CV-1932 (ENV), 2011 U.S. Dist. LEXIS 15569, at *18 (E.D.N.Y. Feb. 14, 2011) (requiring "intent to harm the other contracting party or a reckless disregard of it"); *V.E.C. Corp. v. Hilliard*, No. 10-CV-2542 (VB), 2011 U.S. Dist. LEXIS 152759, at *36 (S.D.N.Y. Dec. 13, 2011) ("Bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."). Plaintiff alleges nothing of this nature. Moreover, Plaintiff has no exclusive rights at the Westchester County Airport beyond possession of the leased premises. (Lease 72.)

It now appears Plaintiff is attempting to assert an unfair competition claim under the guise of a good faith and fair dealing claim. (*See* Opp'n 19 ("Million Air [] entered into the Lease with a reasonable expectation that it would be treated fairly vis-à-vis its competitors").) Such claims sound in tort, however, *see Bristol-Myers Co. v. Picker*, 302 N.Y. 61, 72 (N.Y.

9

1950), and "[u]nder New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality." *Tribie v. Parwanta*, No. 10-CV-6016 (VB), 2012 U.S. Dist. LEXIS 12988, at *28 (S.D.N.Y. Jan. 26, 2012) (citation omitted). There is no allegation that Plaintiff served any notice of claim on Westchester, because it didn't.

In any event, "[t]he essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50-51 (2d Cir. 2019) (citation and internal quotation marks omitted). Plaintiff alleges nothing of the sort against Westchester in its cursory Ross Aviation claim. (*See* Compl. ¶¶ 167-69.)

## CONCLUSION

For the foregoing reasons, and those set forth in its opening Memorandum of Law, Westchester requests that this action be dismissed in its entirety. As Plaintiff has waived its opportunity to amend (*see* ECF Nos. 19-20), Westchester further requests that dismissal be with prejudice.

Dated: September 17, 2021            Respectfully submitted,

JOHN M. NONNA, ESQ.
WESTCHESTER COUNTY ATTORNEY
148 MARTINE AVE., SUITE 600
WHITE PLAINS, NEW YORK 10601
*Counsel for Defendant*

by:

| /s/ *David H. Chen* | /s/ *Sean T. Carey* | /s/ *Shawna C. MacLeod* |
|---|---|---|
| David H. Chen, Esq. | Sean T. Carey, Esq. | Shawna C. MacLeod, Esq. |
| Deputy County Attorney | Senior Assistant Cty. Atty. | Senior Assistant Cty. Atty. |
| (914) 995-3616 | (914) 995-2243 | (914) 995-4194 |
| dhca@westchestergov.com | stca@westchestergov.com | scma@westchestergov.com |

10