UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
  WHITE PLAINS AVIATION PARTNERS,    :
  LLC, d/b/a Million Air White Plains,     :
                Plaintiff,     :
                             :      **OPINION AND ORDER**
  v.                         :
                             :      21 CV 5312 (VB)
  COUNTY OF WESTCHESTER,        :
                Defendant.    :
----------------------------------------------------------------x

Briccetti, J.:

    Plaintiff White Plains Aviation Partners, LLC, d/b/a Million Air White Plains ("Million Air"), brings this action against defendant the County of Westchester ("County") alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

    Now pending is the County's motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #16).

    For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

## BACKGROUND

    For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in Million Air's favor, as summarized below.

    In 2016, Million Air and the County entered into an agreement (the "Lease") whereby Million Air would operate as a commercial fixed based operator at Westchester County Airport (the "Airport"), providing services for private aircraft, passengers, and pilots.  (See Doc. #1-1 ("Lease")).  The leased premises included a terminal building and a hangar.

The Lease authorized Million Air to construct certain "Proposed Improvements" to the leased premises, which are detailed in Schedule C to the Lease. The Proposed Improvements would substantially expand and refurbish the existing terminal building and build a new hangar separate from the existing hangar. The Proposed Improvements did not include any improvements to the existing hangar.

Section 6.2 of the Lease provides:

> If . . . material changes or modifications are required to the Plans or the Proposed Improvements, [Million Air], at its sole cost and expense, shall make such changes or modifications to the Plans . . . and submit same to the County for the County's consent and approval, which consent and approval shall not be unreasonably withheld, delayed or conditioned.

The Lease also includes the following merger clause:

> This Agreement, consisting of Articles 1 to 33, inclusive, and Schedules A, B, C, D and E, constitutes the entire agreement of the parties hereto and supercedes [sic] all prior leases and agreements with respect to the Premises. This Agreement may not be changed, modified, discharged or extended except by mutual written agreement of the County and [Million Air]. The parties agree that no representations or warranties shall be binding upon the County or [Million Air] unless expressed in writing in this Agreement of Lease.

(Lease § 32.1).

According to Million Air, prior to entering into the Lease, the parties "discussed Million Air's plans to modify the existing, out-of-date hangar . . . by replacing it with a state-of-the-art, eco-friendly hangar (the 'Modified Hangar')," and "[t]he parties understood that, once Million Air successfully completed the [Proposed] Improvements, the Modified Hangar would be built in a second phase of construction." (Compl. ¶ 6). That is, Million Air alleges the Lease was negotiated "with the understanding that Million Air, with the County's support, would construct the Modified Hangar . . . at a future date." (Compl. ¶ 42).

In November 2017, Million Air asserts it submitted plans to construct the Modified Hangar for the County's approval pursuant to Section 6.2 of the Lease. The County denied

Million Air's request because "(1) the Modified Hangar was not 'required' and (2) environmental and other regulatory approvals needed to be obtained <u>prior</u> to the County's approval." (Compl. ¶ 73).  The County continued to deny Million Air's request in a January 17, 2018, letter because "in the County's new view, the Modified Hangar was a 'new project' and not a 'modification' of the Plans . . . covered by Section 6.2." (<u>Id</u>. ¶ 83).  In the January 17, 2018, letter, the County also reiterated its prior position that these improvements were not "required" and that Million Air had not yet obtained regulatory approvals.  (<u>Id</u>. ¶ 85).

In support of its claim, Million Air alleges Section 4.2 of the Lease "specifically cites the construction of 'additional hangars' as the type of 'improvements' that are covered by Section 6.2." (Compl. ¶ 84).  After describing the formula to calculate Million Air's rent based on nine acres of use, Section 4.2 provides:

> In the event [Million Air], subject to the County's consent and approval as specified in Article 6 hereof, constructs Fixed Base Operation improvements in addition to the Proposed Improvements specified in Schedule 'C' attached hereto, [Million Air] shall also pay the then-current annual rent rate for the additional acreage required for such improvements.  {Example:  [Million Air] builds additional hangars on 3 more acres.  Annual rent in connection with the Fixed Base Operation is at that time $1.95 per square foot.  Annual rent in connection with the Fixed Based Operation will be calculated on 12 acres total.}

Million Air also alleges Section 6.5 of the Lease requires the County to consider the plans for the Modified Hangar <u>before</u> the requisite regulatory approvals are obtained, and must assist and support Million Air in securing those approvals.

In an April 20, 2018, meeting, Million Air alleges the County expressed support for the Modified Hangar, but through an amended lease.  During the meeting, the County also directed Million Air to submit plans for a joint stormwater system and environmental assessment for the Proposed Improvements and Modified Hangar to be submitted to the Federal Aviation Administration ("FAA").

Million Air states it complied with these demands, but the County again denied Million Air's request in a November 9, 2018, letter.  Notwithstanding the County's prior demand for a stormwater plan covering both the Proposed Improvements and the Modified Hangar, Million Air alleges the County faulted Million Air for not submitting a standalone stormwater plan for the Proposed Improvements as a basis for its denial.  Million Air submits the County's position was motivated by FAA feedback "'strongly advis[ing]' the County to place any further construction at the Airport 'on hold until completion of [its review process for the Proposed Improvements].'" (Compl. ¶¶ 109–10).

In addition, after substantial negotiations towards an amended lease approving the Modified Hangar, Million Air alleges the County demanded Million Air implement the stormwater system for the Proposed Improvements alone as a condition to executing the amended lease.

According to the complaint, failing to construct the Modified Hangar has "caused tens of millions of dollars of damages to Million Air, which has turned away or lost customers who would have purchased services or leased space at the Modified Hangar" as well as "approximately $175,000 in additional lost revenue" for "each week that passes without the County's approval."  (Compl. ¶ 19).  Million Air also alleges implementing the stormwater system for the Proposed Improvements "will entail tearing up already completed construction and will cause significant disruption to Million Air's business."  (Compl. ¶ 162).

Lastly, Million Air alleges the County permitted a different Airport FBO—Ross Aviation—to "accommodat[e] large planes with a gross take-off weight of over 50,000 pounds ('Overweight Aircraft') at the Airport" in violation of Ross Aviation's lease, but did not permit Million Air to do the same.  (Compl. ¶ 132).

4

**DISCUSSION**

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).[1]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.     Breach of Contract Claim

The County argues it did not breach the Lease because Million Air's plans to construct

the Modified Hangar were not "required" to effect the Proposed Improvements and, as a result,

the County was not required to consider them under Section 6.2 of the Lease.

---

[1]      Unless otherwise indicated, case quotations omit all internal citations, quotations,
footnotes, and alterations.

The Court agrees.

A.    Applicable Law

"To state a claim for breach of contract under New York law,[2] the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015).

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016).  "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." Orlander v. Staples., Inc., 802 F.3d at 294.

Contract terms are ambiguous when they "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d at 156–57.

By contrast, "[a] contract term is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Orlander v. Staples, Inc., 802 F.3d at 294–95.  Contractual language "whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a 'reasonable' interpretation." Law Debenture Tr. Co. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010).  "[T]he court should not find the contract ambiguous where the interpretation

---

[2]    Section 30.7 of the Lease provides New York law shall apply in construing the Lease.

urged by one party would strain the contract language beyond its reasonable and ordinary meaning." Id.  When interpreting a contract, "[w]ords and phrases are to be given their plain and ordinary meaning, and New York courts will commonly refer to dictionary definitions in order to determine that meaning." Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014).

"In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning." Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004).  Moreover, the presence of a merger clause in an agreement is evidence that "the contract is an integrated document reflecting a complete statement of the bargain between the parties." Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y, 769 F.3d 807, 816 (2d Cir. 2014). Accordingly, when a contract includes a merger clause "any claimed prior oral condition or agreement was necessarily extinguished at the moment the written contract became fully executed by both parties." Torres v. D'Alesso, 80 A.D.3d 46, 53 (1st Dep't 2010).

B.     Application

Section 6.2 of the Lease is unambiguous.  It requires the County to not unreasonably withhold, delay, or condition its consent to "required" "material changes or modifications" to the Proposed Improvements.  The Lease does not define "required."  However, Merriam-Webster's dictionary defines "required" as "stipulated as necessary to be done, made, or provided." Required, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/required (last visited Mar. 11, 2022).  Plans to build the Modified Hangar are not "required" for the Proposed Improvements, which are complete.

Million Air's interpretation of Section 6.2 is contrary to the Lease's plain meaning. Million Air argues Section 6.2 is meant to cover "a situation in which either Million Air or the

County wishes to effectuate a material change to the premises that requires a change to the existing Plans or Proposed Improvements."  (Doc. # 24 at ECF 18).  The parties could have drafted Section 6.2 to cover "desired" changes, or "any" changes.  But they did not.  "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."  Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d at 475.

Moreover, Section 4.2 does not create ambiguity in the Lease.  Section 4.2 provides for an increase in the rent due from Million Air if the parties agree to additional improvements.  Here, the County has not agreed to any additional improvements.

Million Air argues the parties' oral negotiations before and after executing the Lease should bear on Section 6.2's meaning.  However, here, the Lease is not only unambiguous, but also includes a merger clause.  Therefore, the Court will not consider the parties' oral negotiations.

Accordingly, Million Air's breach of contract claim must be dismissed.

III.    Breach of Implied Covenant of Good Faith and Fair Dealing Claims

Million Air alleges the County breached the implied covenant of good faith and fair dealing contained in the Lease (i) by unreasonably withholding approval of the Modified Hangar and changing its position regarding a stormwater system in bad faith, and (ii) by allowing Ross Aviation to accommodate so-called Overweight Aircraft, encouraging unfair competition against Million Air.

A.      Modified Hangar and Stormwater System Claim

The County argues Million Air's claim for breach of the implied covenant with respect to the Modified Hangar and the stormwater system should be dismissed because it is duplicative of the breach of contract claim.

The Court agrees in part and disagrees in part.

"The implied covenant of good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." 25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co., 144 A.D.3d 665, 667 (2d Dep't 2016).  "However, courts do not recognize a distinct claim for breach of the implied covenant of good faith and fair dealing when it is premised upon the same facts as a breach of contract claim." Clement v. Farmington Cas. Co., 2015 WL 6971565, at *6 (S.D.N.Y. Nov. 10, 2015).  "Consequently, a claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." County of Orange v. Travelers Indem. Co., 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014).

Million Air's implied covenant claim that the County unreasonably rejected the Modified Hangar plans in violation of the Lease must be dismissed as redundant of its breach of contract claim.

However, Million Air's allegations regarding the stormwater system plans are sufficient to state a claim for breach of the implied covenant.  Million Air alleges the County directed Million Air to prepare a joint stormwater system plan for the Proposed Improvements and Modified Hangar.  Subsequently, according to Million Air, the County demanded that Million

Air implement a stormwater management system for the Proposed Improvements alone as a condition to the County executing an amended lease approving the Modified Hangar.  Million Air alleges constructing the demanded stormwater system will entail disruption to Million Air's business and significant costs, costs that would not have been incurred absent the County's original instructions to complete the Proposed Improvements without a stormwater system.  In other words, Million Air pleads the County "advanced multiple inconsistent and bad-faith positions" regarding the required stormwater system, depriving Million Air of the benefits of the Proposed Improvements covered by the Lease.  (Compl. ¶ 160).  The Court, of course, must accept these allegations as true at this stage of the litigation.

Accordingly, the motion to dismiss Million Air's implied covenant claim with respect to the stormwater system must be denied, even though the motion with respect to rejection of the Modified Hangar plans must be granted.

B.     Unfair Competition

The County argues Million Air's claim for breach of the implied covenant with respect to unfair competition with Ross Aviation should be dismissed because the Lease does not grant Million Air the right to be free from competition from other Airport tenants.

The Court agrees.

"The boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract."  Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir. 1989).  "[N]o obligation can be implied which would be inconsistent with other terms of the agreement of the parties."  S. Telecom Inc. v. ThreeSixty Brands Grp., LLC, 520 F. Supp. 3d 497, 504 (S.D.N.Y. 2021).

Section 26.1 of the Lease provides:

Except for the exclusive right of [Million Air] to possession of the Premises, no exclusive rights at the Airport are granted by this Agreement and no greater rights or privileges with respect to the use of the Premises or any part thereof are granted or intended to be granted to [Million Air] by this Agreement, or any provision thereof, other than the rights and privileges expressly and specifically granted hereby.

The Lease does not preclude the County from allowing Ross Aviation to accommodate Overweight Aircraft and not allowing the same to Million Air.  "The duty of good faith cannot create such provisions where they are completely absent from the contract itself."  Gencor Indus., Inc. v. Ingersoll-Rand Co., 2000 WL 1876651, at *10 (S.D.N.Y. 2000).

Because the Lease deprives Million Air of any exclusive rights not set forth in the Lease, Million Air cannot state a claim for breach of the implied covenant arising from the County's arrangements with another lessee.

Accordingly, Million Air's claims for breach of the implied covenant of good faith and fair dealing with respect to Ross Aviation must be dismissed.

IV.   Declaratory Judgment Claim

Million Air seeks a declaration that the County breached its obligations under Section 6.2 of the Lease.  Because the Court finds no breach occurred, Million Air's declaratory judgment claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Million Air's breach of implied covenant claim with respect to the stormwater system shall proceed.  All other claims are dismissed.

By March 25, 2022, the County shall file an answer.

By separate Order, the Court will schedule an initial conference in this matter.

The Clerk is instructed to terminate the motion.  (Doc. #16).

Dated:  March 11, 2022
        White Plains, NY

                            SO ORDERED:

                            _____
                            Vincent L. Briccetti
                            United States District Judge

12