**EXHIBIT C**




George Latimer
County Executive

Joan McDonald
Director of Operations

April 22, 2022

**VIA E-MAIL & OVERNIGHT MAIL**

Eon S. Nichols (enichols@cuddyfeder.com)
Cuddy + Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, NY 10601

Re: *Agreement of Lease, dated June 1, 2016, between the County of Westchester and White Plains Aviation Partners, LLC, d/b/a Million Air White Plains (the "2016 Lease")*

Dear Mr. Nichols,

I write in response to your letter of March 16, 2022, which states that Million Air "desires to undertake improvements (as such term is defined in Section 5.5) to the Premises consisting of modifying an existing 24,000 square feet hangar located on the Premises by increasing the square footage of that hangar by 56,000 square feet for a total square footage of approximately 80,000[.]"

As the letter indicates, under Section 5.5 of the 2016 Lease, approval from the County "shall not be unreasonably withheld, conditioned or delayed." The Lease further requires Million Air to provide "copies of the plans and specifications for the proposed improvements in sufficient detail to make a proper review thereof," and requires the County, in turn, to "advise Lessee within forty (40) days of its approval or disapproval of the proposed work and in the event it disapproves, stating its reasons therefor."

Initially, I would note that the plans provided with your letter do not appear to propose any improvements for "modifying an existing 24,000 square feet hangar…by increasing the square footage of that hangar by 56,000 square feet…" Rather, the proposed "improvement" appears to be the demolition of an existing 24,000 square foot T-hangar replaced by a newly constructed 80,000 square foot hangar on the same footprint.

1. As your letter acknowledges, the County's approval is required. The County consists of two branches of government, the executive branch and the legislative branch. I note that your letter was sent to the Commissioner of the Department of Public Works & Transportation, the County Attorney, and to Avports, the Airport Manager (who

forwarded it to me). The legislative branch, the Board of Legislators ("BOL"), must also consider and approve Million Air's new request. We will transmit your letter and plans and specifications to the Board of Legislators.

2. The County's Airport Advisory Board ("AAB") is charged with making recommendations to the County regarding all aspects of the airport. My understanding is that Million Air presented portions of its current proposal to the AAB in March of 2021, but it is not clear whether that presentation included the latest plans and specifications. The AAB has not had an opportunity to consider and provide its input to the County. We will forward your letter and plans and specifications to that body for its input and recommendation.

3. Sections 6.4 and 6.5 of the 2016 Lease require Million Air to obtain all "Approvals" from "Government Authorities," as those terms are defined in the Lease. Section 5.10 of the 2016 Lease provides that Million Air will obtain all required approvals including approvals required under the National Environmental Policy Act as amended ("NEPA") for all improvements under that section of the 2016 Lease. The Short Environmental Assessment for Airport Development Projects ("EA") required by NEPA has been submitted to the FAA and is awaiting FAA approval. As part of the FAA approval process, a thirty day public comment period is required. Million Air's request cannot be considered until the FAA comments on and approves the EA and the public's comments are taken into account.

4. Million Air's proposal is also subject to the State Environmental Quality Review Act (SEQRA) per Section 5.10 of the 2016 Lease. SEQRA approval must come in the form of a resolution by the BOL that the proposal in question will not have any significant adverse impact on the environment. Your latest set of plans and specifications has accordingly been forwarded to the County's Department of Planning for SEQRA analysis.

5. As you know, FAA Grant Assurance 22 requires that the County not unjustly discriminate among tenants. In 2016, Million Air received the 2016 Lease allowing it to build the Proposed Improvements, a 50,000 square foot hangar and a refurbishment of its terminal building. Million Air's request must be considered in light of requests by other FBOs and airport tenants who, unlike Million Air, did not have the ability to modernize or refurbish hangars or facilities. Million Air's current proposal cannot be approved until the requests of other tenants are evaluated and addressed to assure compliance with Grant Assurance 22.

6. The County cannot consider Million Air's latest proposal until and unless Million Air completes all the obligations stemming from its last set of proposals, i.e., the "Proposed Improvements" described in the 2016 Lease. For example, Section 6.8 requires Million Air to deliver to the County, upon completion of the Proposed Improvements:

> (a) a certification from its supervising architect certifying: (i) that regular and periodic inspections have been made of the Proposed Improvements;

    and (ii) that the Proposed Improvements have been completed in accordance with the Plans and/or any Modified Plans and the New York State Building Code; and

    (b) two (2) complete sets of as-built drawings and an electronic file in a County approved format. Having consulted with the Department of Public Works & Transportation, it appears that neither of these requirements has been satisfied.

7. Section 6.14 of the Lease prohibits Million Air from removing any T-Hangar currently on the premises except as such removal is part of the Plans for the Proposed Improvements. Million Air's new proposal calls for the demolition of the existing, 24,000 square foot T-hangar.

8. Separately, Section 3.1(A) (i) of the Lease provides that Million Air: "shall endeavor to maintain the Light General Aviation ('LGA') uses at the Premises, at their current levels as of the date hereof, unless otherwise mutually agreed in writing by the County and [Million Air]. Every five (5) years during the Term or unless Million Air requests sooner than every five (5) years, the County and [Million Air] shall evaluate market demand for light general aviation services and agree on adjustments as necessary." It is unclear, from the plans and specifications you provided, whether the proposed 80,000 square foot hangar would maintain those LGA capabilities and services, and/or whether it will be sufficient to support any changes in LGA market demand that have occurred over the past five years.

9. As you are aware, Million Air has sued the County over your earlier request to build the 80,000 square foot hangar. Specifically, the lawsuit alleges that the County has advanced multiple "bad-faith positions" when it allegedly instructed Million Air that the stormwater system be constructed along with the "Modified Hangar" and then "reversed course and demanded Million Air build a stormwater management system for the Initial Improvements alone." The County filed its Answer denying these and other allegations, and the lawsuit is entering the discovery phase. It is premature for the County to consider Million Air's latest proposal while many of the issues relating to that proposal are being actively litigated.

Very truly yours,

*Joan McDonald*

Joan McDonald
Director of Operations

cc: Hugh Greechan, Commissioner of Public Works
    April Gasparri, Airport Manager
    John M. Nonna, County Attorney

3