UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITE PLAINS AVIATION PARTNERS, LLC d/b/a, Million Air White Plains,<br><br>           Plaintiff,<br><br>  -against -<br><br>THE COUNTY OF WESTCHESTER,<br><br>           Defendant. | 21-CV-5312 (VB)(JM) |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS COMPLAINT

Office of the Westchester
County Attorney
148 Martine Avenue, Suite 600
White Plains, New York 10601
(914) 995-2690

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………………..i

PRELIMINARY STATEMENT …………………………………………………………….1

LEGAL STANDARDS ……………………………………………………………………...2

ARGUMENT ……………………………………………………………………………..…3

    I.       Plaintiff offers no explanation for its undue delay in asserting rights under Section 5.5 of the Lease that it could have asserted months or even years ago ....………………………………………………………………….3

    II.      Supplementing the original Complaint would be futile because the new claim that Plaintiff seeks to assert is not ripe for review ..……………………5

    III.     Supplementing would also be futile because the proposed First Amended Complaint fails to state a claim …………………………………..6

    IV.     The proposed FAC recycles a number of claims that are subject to dismissal under the law of the case doctrine ......………………………………11

CONCLUSION AND
REQUEST FOR DISCOVERY STAY IN THE ALTERNATIVE ……………………….....12

# **TABLE OF AUTHORITIES**

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, No. 19-cv-7800 (MKV),
2022 U.S. Dist. LEXIS 56085 (S.D.N.Y. Mar. 28, 2022).............................................................5

*Bauer v. City of Rossford*, No. 16-cv-0722 (JZ), 2017 U.S. Dist. LEXIS 47822
(N.D. Ohio Mar. 30, 2017)..........................................................................................................1

*Book v. Tobin*, 263 F. App'x 174 (2d Cir. 2008) ........................................................................ 5, 6

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) ........................................... 2

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).............................................................. 7

*Franconero v. UMG Recordings, Inc.*, 542 F. App'x 13 (2d Cir. 2013) ....................................... 2

*Fried v. 20 Sutton Place S., Inc.*, 2 A.D.3d 351 (1st Dep't 2003) .................................................. 7

*Friedman v. Consol. Edison Co.*, No. 97-cv-2735 (DLC), 1999 U.S. Dist. LEXIS 4241
(S.D.N.Y. Mar. 31, 1999)..........................................................................................................12

*Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020)........................................ 4

*In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (JES), 2008 U.S. Dist. LEXIS 55106
(S.D.N.Y. July 17, 2008) ............................................................................................................ 2

*In re PCH Assoc.*, 949 F.2d 585 (2d Cir. 1991)............................................................................ 11

*Lubavitch of Old Westbury, Inc. v. Bd. of Trs.*, No. 08-cv-5081 (DRH), 2021 U.S. Dist.
LEXIS 127819 (E.D.N.Y. July 7, 2021).................................................................................... 2

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir. 2002) ..............................................6-7

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956 (2d Cir. 1998)................................... 3

*Nelkenbaum v. Jordy*, No. 19-cv-7953 (VB), 2020 U.S. Dist. LEXIS 240776
(S.D.N.Y. Dec. 22, 2020)........................................................................................................... 6

*Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-cv-8924 (VB), 2020 U.S. Dist. LEXIS 109265
(S.D.N.Y. June 22, 2020) ........................................................................................................... 4

*Selah v. N.Y.S. DOCS Comm'r*, 04-cv-3273 (DC), 2006 U.S. Dist. LEXIS 51051
(S.D.N.Y. July 24, 2006) .......................................................................................................... 11

*Thomas v. Town of Mamakating, N.Y.*, No. 18-cv-4295 (VB), 2019 U.S. Dist. LEXIS 34065
(S.D.N.Y. Mar. 4, 2019) ........................................................................................................ 5, 6

*U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16 (2d Cir. 2016) ....................................................... 2

*Wedra v. Cree, Inc.*, No. 19-cv-3162 (VB), 2020 U.S. Dist. LEXIS 49266
   (S.D.N.Y. Mar. 20, 2020) ........................................................................................................ 4

*Wize Eyes of Syosset, Inc. v. Turnpike Corp.*, 66 A.D.3d 884 (2d Dep't 2009) ............................ 7

*Yurman Design, Inc. v. Chaindom Enters.*, No. 99-cv-9307 (JFK),
   2001 U.S. Dist. LEXIS 8606 (S.D.N.Y. June 26, 2001) ........................................................ 3-4


FEDERAL RULE OF CIVIL PROCEDURE 12 ........................................................................................ 6

FEDERAL RULE OF CIVIL PROCEDURE 15 ........................................................................................ 2

40 C.F.R. §§ 1500 *et seq* ……………………………………….…………………………….. 9

WESTCHESTER COUNTY CODE § 107.01 ........................................................................................... 5

WESTCHESTER COUNTY CODE § 110.01 ........................................................................................... 5

WESTCHESTER COUNTY CODE § 277.231 ……………………………………………………. 6

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted in opposition to the motion of White Plains Aviation Partners, LLC ("Million Air" or "Plaintiff"), which seeks leave to "amend and supplement" its complaint nearly a year after filing the original, and *after* the original complaint was largely dismissed by the Court on March 11, 2022. (*See generally* ECF No. 26, hereafter the "Order"). Plaintiff argues (ECF No. 36, at 1) that its proposed amendment is "based solely on events that took place subsequent to the Order."

The "subsequent event" to which Plaintiff refers is its March 16, 2022 attempt to build the very same 80,000 square foot hangar (the "Replacement Hangar") at issue in the original Complaint. Plaintiff suggests that this renewed attempt is "guided by the Court's governing interpretation of the [2016] Lease." (ECF No. 36, at 2.) But this is true only insofar as Plaintiff now seeks to build the Replacement Hangar pursuant to another section of the same Lease.

In other words, five days after the Court held that there was no contractual right to build the Replacement Hangar under Sections 4.2, 6.2, or 6.5 of the Lease, Plaintiff began manufacturing a new claim, based on the theory that it has a contractual right to build the Replacement Hangar under Section 5.5. Plaintiff should not be allowed "to test-drive various potential causes of action, using defendant's responsive motion practice and the Court's opinions as a kind of roadmap in an effort to find a meritorious claim." *Bauer v. City of Rossford*, No. 16-cv-0722 (JZ), 2017 U.S. Dist. LEXIS 47822, at *15 (N.D. Ohio Mar. 30, 2017).

Critically, Plaintiff could have asserted its alleged Section 5.5 rights last August, when it had the opportunity to amend its original Complaint in response to Westchester's motion to dismiss. (*See* ECF No. 19.) It could have asserted them last June, as part of the original Complaint. Indeed, Plaintiff could have asserted its alleged Section 5.5 rights in November

1

2017, when it first sought to build the Replacement Hangar, or at any point during the ensuing negotiations. Plaintiff chose not to do so until now.

In light of this undue delay, and the resulting prejudice to Westchester, and for the additional reasons of ripeness, futility, and law of the case, as set forth below, leave to amend and supplement the Complaint should be denied.

## LEGAL STANDARDS

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *Franconero v. UMG Recordings, Inc.*, 542 F. App'x 13, 17 (2d Cir. 2013); *see also U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) ("A district court has broad discretion in determining whether to grant leave to amend"). "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

"Rule 15(d) provides in pertinent part that the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented." *Lubavitch of Old Westbury, Inc. v. Bd. of Trs.*, No. 08-cv-5081 (DRH), 2021 U.S. Dist. LEXIS 127819, at *18 (E.D.N.Y. July 7, 2021) (citations omitted). "[T]he Rule 15(d) standard is functionally identical to the standard set forth in Rule 15(a)." *Id.* at *19 (citations omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (JES), 2008 U.S. Dist. LEXIS 55106, at *9-10 (S.D.N.Y. July 17, 2008) (factors include "undue delay, bad faith, dilatory tactics, undue prejudice ... [and] futility").

2

**ARGUMENT**

I.   **Plaintiff offers no explanation for its undue delay in asserting rights under Section 5.5 of the Lease that it could have asserted months or even years ago.**

"The burden to explain a delay is on the party that seeks leave to amend." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998). Here, instead of trying to carry this burden, Plaintiff simply suggests that there *was* no undue delay, stating in its supporting memorandum of law that "the additional factual allegations that form the basis for the supplemented pleading took place only two months ago[.]"[1] (ECF No. 36, at 6.)

But these "additional factual allegations" took place "two months ago" only because Plaintiff decided, for reasons unknown, ***to sit on its alleged rights until then***. Specifically, Plaintiff waited until March 16, 2022 to seek permission to construct the Replacement Hangar pursuant to Lease Section 5.5, even though it could have done so years ago—Section 5.5's language has remained unchanged since Plaintiff first sought to build the Replacement Hangar. As another court in this district once noted in denying leave to amend, "Plaintiff has been aware since the inception of this case of all of the facts underlying the proposed new claims, and does not contend that there has been any intervening change in the law. Plaintiff could have asserted these claims at any time[.]" *Yurman Design, Inc. v. Chaindom Enters.*, No. 99-cv-9307 (JFK), 2001 U.S. Dist. LEXIS 8606, at *7 (S.D.N.Y. June 26, 2001).

Notably, Westchester took the position that Section 6.2 does not apply to new projects such as the Replacement Hangar over four years ago. (*See* Compl. ¶ 83.) Nothing prevented Plaintiff from then seeking to build the Replacement Hangar under Section 5.5, which allows for certain "additions or replacements." And nothing prevented Plaintiff from invoking Section 5.5

---

[1] Westchester responded to Plaintiff's March 16th proposal (ECF No. 41-3) via letter dated April 22, 2022. (ECF No. 41-5.) Plaintiff replied to this letter on May 13, 2022 (ECF No. 41-6)—and then filed the instant motion the next business day.

3

at any point thereafter.  Nevertheless, when Plaintiff attempted to force the Replacement Hangar upon the County in June 2021 via the underlying lawsuit, it chose to only litigate the scope of Lease Sections 4.2, 6.2, and 6.5, and not Section 5.5.  "[T]he failure of an attorney to recognize a potential cause of action is not a sufficient justification for granting leave to amend a complaint." *Yurman Design, Inc.*, 2001 U.S. Dist. LEXIS 8606, at *7.

At the very latest, Plaintiff should have asserted its alleged Section 5.5 rights in August 2021, when Westchester argued in its motion to dismiss that Sections 4.2, 6.2, and 6.5 were inapplicable to the Replacement Hangar.  (*See* ECF No. 19 (giving Plaintiff opportunity to amend).)  Instead, Plaintiff declined the opportunity to invoke Section 5.5 via an amended complaint, and opposed Westchester's motion.  Where a plaintiff has declined a prior opportunity to amend a complaint, after reviewing a defendant's motion to dismiss, denial of a subsequent motion for leave to amend is well within the court's discretion.  *See, e.g.*, *Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163, 165 n.1 (S.D.N.Y. 2020); *Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-cv-8924 (VB), 2020 U.S. Dist. LEXIS 109265, at *23 (S.D.N.Y. June 22, 2020); *Wedra v. Cree, Inc.*, No. 19-cv-3162 (VB), 2020 U.S. Dist. LEXIS 49266, at *29 (S.D.N.Y. Mar. 20, 2020).

Contrary to its assertion (ECF No. 36, at 6), Plaintiff's undue delay **would** be prejudicial to Westchester if leave to amend is granted.  Westchester has now responded to Plaintiff's interrogatories and made two productions, with additional document review ongoing.  Moreover, depositions (the deadline for which is August 15th, per ECF No. 32) may well be completed before the instant motion can even be adjudicated.  If it is granted, and if the new Section 5.5 claim survives a motion to dismiss (*see generally* Parts II-IV, *infra*), Plaintiff will undoubtedly seek to reopen discovery.  Second Circuit courts have "repeatedly" found that this prejudices the

4

nonmoving party. *ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, No. 19-cv-7800 (MKV), 2022 U.S. Dist. LEXIS 56085, at *23 (S.D.N.Y. Mar. 28, 2022).

## II. Supplementing the original Complaint would be futile because the new claim Plaintiff seeks to assert is not ripe for review.

A motion for leave to amend may be denied as futile where the proposed new claims are not ripe for review. *See Thomas v. Town of Mamakating, N.Y.*, No. 18-cv-4295 (VB), 2019 U.S. Dist. LEXIS 34065, at *12 n.6 (S.D.N.Y. Mar. 4, 2019) (no subject matter jurisdiction over unripe claims); *see also Book v. Tobin*, 263 F. App'x 174, 175 (2d Cir. 2008). Here, Plaintiff seeks to assert a new "breach of contract claim based on the County's unreasonable disapproval under Section 5.5 of the Lease of Million Air's proposed plans for the [Replacement] Hangar on April 22, 2022." (ECF No. 36, at 5.) But the issue of "unreasonable disapproval" (*id.*) is not ripe for review, because Westchester's April 22nd letter was clearly not a final "disapproval" of Million Air's new Section 5.5 proposal.

For example, in its April 22nd letter, Westchester noted (*see* ECF No. 41-5, at 3) that Million Air's proposal required approval from the County Board of Legislators ("BOL"), to which the plans and specifications for the Replacement Hangar (ECF No. 41-3) were accordingly forwarded. Instead of awaiting a decision from that body, Plaintiff simply deemed this "unreasonable."[2] Similarly, Westchester noted that the County's Airport Advisory Board ("AAB") is "charged with making recommendations ... regarding all aspects of the airport," and accordingly forwarded Plaintiff's plans and specifications "to that body for its input and

---

[2] The Court may take judicial notice of the fact that Westchester's municipal government is comprised of both an executive and a legislative branch. *See generally* WESTCHESTER COUNTY CODE §§ 107.01, 110.01. Plaintiff is well acquainted with the legislative branch, having presented its plans for the original Proposed Improvements to the BOL during the administration of the previous County Executive. Indeed, Plaintiff attended a BOL meeting on June 8, 2022, convened for the specific purpose of evaluating the new proposal.

5

recommendation." (ECF No. 41-5, at 3; *see also* WESTCHESTER COUNTY CODE § 277.231 (establishing AAB and setting forth its duties and responsibilities).) Again, Plaintiff simply deemed this "unreasonable."[3]

Westchester also noted, in the April 22nd letter, that the proposal to construct the Replacement Hangar required State Environmental Quality Review Act (SEQRA) approval, pursuant to Section 5.10 of the Lease, and that Plaintiff's plans and specifications were accordingly being forwarded to the County's Department of Planning for that purpose. (*See* ECF No. 41-5, at 3.) Once again, Plaintiff simply deemed this response "unreasonable" and moved to amend its Complaint, without even awaiting the outcome of the SEQRA review process.[4]

In sum, Westchester has not made a final decision on Plaintiff's new request to build the Replacement Hangar, and absent such a decision, Westchester cannot have "unreasonably denied" said request in violation of Lease Section 5.5. That new claim is thus unripe for judicial review, and Plaintiff's request to supplement its Complaint to assert it should accordingly be denied, on futility grounds. *See Book*, 263 F. App'x at 175; *Thomas*, 2019 U.S. Dist. LEXIS 34065, at *12 n.6.

### III. Supplementing would also be futile because the proposed First Amended Complaint fails to state a claim.

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Nelkenbaum v. Jordy*, No. 19-cv-7953 (VB), 2020 U.S. Dist. LEXIS 240776, at *9 (S.D.N.Y. Dec. 22, 2020) (quoting *Lucente v. Int'l Bus. Machs.*

---

[3] Plaintiff is aware of the AAB and its mandate, having gone before that body just last year. In fact, Plaintiff attended an AAB meeting on June 8, 2022 to discuss the proposed Replacement Hangar.

[4] Plaintiff had no reason to anticipate SEQRA disapproval of the Replacement Hangar, as the County previously approved Plaintiff's new 50,000 square foot hangar and refurbishment of its terminal building (the two "Proposed Improvements" authorized by the Lease) under SEQRA.

*Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  Here, even if the Court determines that the proposed First Amended Complaint (ECF No. 41-1, hereafter "FAC") is ripe, it would still be subject to dismissal on Rule 12(b)(6) grounds—specifically, the claim that the "objections" set forth in Westchester's April 22nd letter "were all unfounded and unreasonable, and therefore in breach of Section 5.5."  (FAC ¶ 151; *see also id.* at ¶¶ 168-81.)

As an initial matter, and despite Plaintiff's assertion to the contrary (ECF No. 36, at 8), this Court can—and should—hold that the County's points regarding the Replacement Hangar (*see generally* ECF No. 41-5) were not unreasonable as a matter of law.  Indeed, courts have not hesitated to dismiss claims brought under similar lease provisions where defendants, as a matter of law, did not unreasonably withhold consent or approval.  *See Wize Eyes of Syosset, Inc. v. Turnpike Corp.*, 66 A.D.3d 884 (2d Dep't 2009); *Fried v. 20 Sutton Place S., Inc.*, 2 A.D.3d 351, 351-52 (1st Dep't 2003); *cf. Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999) ("there is no reason why courts, on a motion to dismiss ... could not identify a response as not 'clearly unreasonable' as a matter of law").  The new Section 5.5 claim can similarly be refuted on the face of the proposed FAC.

For example, in support of its new Section 5.5 claim, Plaintiff alleges that "[t]he County's failure to initiate [review by the BOL and AAB] within the deadline was unreasonable."  (FAC ¶ 152.)  But Westchester's April 22nd letter (which is appended to the proposed FAC) demonstrates that review by those two bodies *was* initiated prior to Section 5.5's deadline.  (*See* ECF No. 41-5, at ¶¶ 1-2.)  Indeed, Plaintiff has actively participated in both of those bodies' respective review processes since then.

Plaintiff also takes issue (FAC ¶¶ 161-63) with Westchester's position, as expressed in the April 22nd letter, that "Million Air's new proposal calls for the demolition of the existing,

24,000 square foot T-hangar" in violation of Section 6.14 of the Lease.  (ECF No. 41-5, at 3.)  Specifically, Plaintiff argues that "it does not seek to completely remove the Existing Hangar pursuant to Section 6.14, but instead seeks to modify it by increasing its size."  (ECF No. 36, at 11.)  This tired, semantics-based argument about a "modification" has already been rejected by the Court.  It is also belied by Plaintiff's own plans and specifications for the Replacement Hangar, which twice explicitly reference a "Demolition Plan" for the existing T-hangar.  (*See* ECF No. 41-3, at 4-5.)

Plaintiff next takes issue (FAC ¶¶ 164-65) with Westchester's concern that it was unclear, from Plaintiff's plans and specifications, whether the proposed Replacement Hangar would provide an appropriate level of Light General Aviation ("LGA") services, as required by the Lease.  But Plaintiff's only response to Westchester's concern was to represent, via counsel, that the Replacement Hangar is "sufficient to support any changes in LGA market demand that ha[ve] occurred over the past five years."  (FAC ¶ 165; *see* ECF No. 41-5, at 3.)  It was not unreasonable for Westchester to withhold approval of the Replacement Hangar until Plaintiff provided more than just an attorney representation, given that Lease Section 3.1(A)(i) explicitly requires an evaluation of LGA service demand, and further requires that all LGA customers "be treated in a fair and equitable manner."  (ECF No. 41-2, at 11.)

Plaintiff also alleges that it is "unreasonable" for Westchester to condition its approval of the Replacement Hangar on National Environmental Policy Act ("NEPA") approval from the Federal Aviation Administration ("FAA").[5]  (*See* FAC ¶¶ 154-56; ECF No. 36, at 10.)  But the same proposed FAC also reasserts the allegation that Westchester "ran afoul" of the FAA in 2018, and "made a significant misstep," by instructing Plaintiff to proceed with the Proposed

---

[5] Unlike SEQRA review, which is conducted by the County (pursuant to state law), NEPA review is conducted by the FAA (pursuant to federal law).

Improvements "in the absence of FAA environmental approval." (FAC ¶ 112.) In other words, the proposed FAC seeks to hold Westchester liable for both awaiting, and *not* awaiting, FAA approval.[6] Such incompatible claims will not survive a Rule 12(b)(6) motion.

The law is in fact clear that, contrary to Plaintiff's suggestion (*see* FAC ¶¶ 154-56; ECF No. 36, at 10), construction of the Replacement Hangar cannot commence (even with County approval) until the FAA completes its NEPA review and approves the relevant plans.[7] (*See* FAC ¶¶ 111, 113; ECF No. 36, at 10; ECF No. 41-6, at 3-5). As Plaintiff itself notes, it is "customary practice" in land use development for a landlord to attach "environmental conditions . . . that must be satisfied before construction can commence." (ECF No. 36, at 10.) While Plaintiff also posits that "without [County] approved plans for a project, meaningful environmental review and approval cannot occur" (ECF. No. 36, at 10), that is simply not the case here, given that an environmental assessment incorporating the proposed Replacement Hangar is already undergoing NEPA review.[8] (FAC ¶¶ 92, 105.) Nothing in Section 5.5 requires the County to approve new construction in advance of FAA approval. And awaiting such approval before

---

[6] It is worth noting that Section 5.5 of the Lease, unlike Section 6.5, does not require Westchester to assist in obtaining regulatory approval for Plaintiff's proposed new additions or replacements.

[7] *See, e.g.*, Federal Aviation Administration, "Airport Environmental Review Process," *available at*: https://www.faa.gov/airports/environmental/nepa/ (stating that the FAA's NEPA "environmental review process must be completed ***before*** a project commences" (emphasis added); FAA Order 1050.1F – *Environmental Impacts: Policies and Procedures*, and the *Environmental Desk Reference for Airport Actions*, § 2-1.1; FAA Order 5050.4B – *NEPA Implementing Instructions for Airport Actions*, §§ 202, 1401; *see also* 40 C.F.R. §§ 1500, *et seq.* (Council on Environmental Quality NEPA regulations).

[8] The Replacement Hangar is already undergoing NEPA review because NEPA's implementing regulations, and FAA policies and procedures, require the FAA to consider the environmental impacts of related and reasonably foreseeable future projects. *See* Procedures for Handling Airspace Matters, FAA Order JO 7400.2N (6/17/2021), Ch. 32, § 4-4 (Segmentation, Independent Utility, and Cumulative Impacts); Environmental Impacts: Policies and Procedures, FAA Order 1050.1F (7/16/15), Ch. 2, § 3.2(b) (Initial Environmental Review – Scope of Proposed Action); 40 C.F.R. § 1508.1(g)(3). At the time that Plaintiff and Westchester were negotiating a possible lease amendment, such projects included both the Proposed Improvements ***and*** the Replacement Hangar. (FAC ¶¶ 90-105.)

9

making a final determination on the Replacement Hangar is particularly reasonable given the unique circumstances here—in November 2018, the FAA admonished Westchester for allowing "partial construction" of the Proposed Improvements "prior to completion of the NEPA process." (*See* FAC ¶¶ 111-13.)

Next, Plaintiff takes issue (*see* FAC ¶¶ 157-58) with Westchester's concern that it must consider Plaintiff's new Section 5.5 request "in light of requests by other ... airport tenants who, unlike Million Air, did not have the ability to modernize or refurbish hangars or facilities." (ECF No. 41-5, at 2.) Westchester's concern is a legitimate one—Plaintiff does not (and cannot) dispute that the FAA requires the County to treat all airport tenants equally via its grant assurances. Plaintiff alleges that Westchester "fail[ed] to take timely action" in this regard (FAC ¶ 158), but in actuality, the County began the process of updating its Airport Master Plan more than two years ago, only to have the public comment portion delayed by the pandemic.[9]

Plaintiff next alleges that "requesting documents relating to the Proposed Improvements, especially when Million Air had fully complied with the County's previous similar requests, simply does not constitute a reasonable basis to refuse to act on Million Air's requested improvements under Section 5.5 of the Lease." (FAC ¶ 160.) Plaintiff refers to the fact that Westchester reminded it, via the April 22nd letter, that Plaintiff has not yet provided certification from its architect that the completed Proposed Improvements comply with New York State's Building Code, and not yet provided a final set of as-built drawings, all of which are required

---

[9] Notably, the Master Plan update process includes an examination of fixed-based operators (such as Million Air and Ross Aviation), and their requests to "store more aircraft at the airport." Martin Wilbur, "Westchester Ready to Begin Public Engagement on Airport Master Plan," THE EXAMINER NEWS (May 9, 2022), *available at*: https://www.theexaminernews.com/westchester-ready-to-begin-public-engagement-on-airport-master-plan/; *see also* Westchester County, "Airport Planning," *available at*: https://airport.westchestergov.com/airport-planning; Westchester County, "On the Horizon 2022" (April 27, 2022), *available at*: https://www.westchestergov.com/home/all-press-releases/9535-on-the-horizon-2022 (listing dates, times and locations for public meetings).

under Lease Section 6.8.  (*See* ECF No. 41-5, at 2-3.)  Reminding Plaintiff of its undisputed Lease obligations was hardly "unreasonable," nor was this a "refusal to act" by Westchester, given that the documents required under Section 6.8 are entirely within Plaintiff's control.

Lastly, Plaintiff alleges that it was "frivolous" for Westchester to take the position that it is premature to consider the Replacement Hangar while the underlying action is still pending.  (FAC ¶ 166.)  But as Plaintiff concedes, its surviving claim from the original Complaint and its proposed new claim are "connected."  (ECF No. 36, at 6.)  Specifically, Plaintiff's surviving claim revolves around its allegation that Westchester acted in bad faith by "reversing course" on its instruction for Plaintiff to construct a storm water system for the Replacement Hangar (*see* Compl. ¶¶ 160-63), while its proposed new claim stems from its renewed request to build the same Replacement Hangar.  (*See* FAC ¶¶ 169-73.)  In other words, rights and liabilities that will directly affect Plaintiff's pending Section 5.5 request are still being adjudicated.  It is perfectly reasonable for Westchester to consider these rights and liabilities before making a final decision on the Replacement Hangar.

**IV.    The proposed FAC recycles a number of claims that are subject to dismissal under the law of the case doctrine.**

As a final note, much of the proposed FAC simply recycles claims and allegations that the Court rejected in its March 11, 2022 Opinion & Order.[10]  Each of these are subject to dismissal pursuant to the law of the case doctrine, under which the Court's decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.  *See In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991); *Selah v. N.Y.S. DOCS Comm'r*, 04-cv-3273 (DC), 2006 U.S. Dist. LEXIS 51051, at *6-7 (S.D.N.Y. July 24, 2006).

---

[10] The FAC's "Third Claim for Relief" is essentially the surviving claim from the original Complaint.

11

For example, the FAC re-asserts (*see* FAC ¶¶ 5, 7-14, 41-46, 48-89, 121-28, 134, 183-84) the allegation that the Replacement Hangar was somehow authorized by Sections 4.2, 6.2, and 6.5 of the Lease. This allegation was the basis for Plaintiff's original breach of contract claim, its original declaratory judgment claim, and part of its original covenant of good faith and fair dealing claim—all of which the Court dismissed. (*See* Order 7-8.)

The proposed FAC also re-asserts Plaintiff's "disparate treatment" claim regarding its competitor, Ross Aviation. (*See* FAC ¶¶ 135-41.) The Court dismissed this claim, too, and it is similarly barred by the law of the case. (*See* Order 10-11.)

Because amending/supplementing the Complaint just to assert these rejected claims again would be futile, leave to do so should be denied.

## CONCLUSION AND REQUEST FOR DISCOVERY STAY IN THE ALTERNATIVE

For the foregoing reasons, Westchester respectfully requests that Plaintiff's motion for leave to amend and supplement the original Complaint be denied.

Should the Court nevertheless grant Plaintiff's motion and permit it to file the proposed FAC, Westchester respectfully requests, in the alternative, that all discovery in the underlying action be stayed pending resolution of its anticipated motion to dismiss the FAC. Doing so would be far less burdensome on the parties (and would be more judicially efficient) than having to undergo a "second round of discovery" on Plaintiff's new Section 5.5 claim. *See Friedman v. Consol. Edison Co.*, No. 97-cv-2735 (DLC), 1999 U.S. Dist. LEXIS 4241, at *6 (S.D.N.Y. Mar. 31, 1999).

Dated:  June 9, 2022  JOHN M. NONNA
White Plains, New York  WESTCHESTER COUNTY ATTORNEY
*Counsel for Defendant*

by:  /s/ ***David H. Chen***  /s/ ***Shawna C. MacLeod***
David H. Chen  Shawna C. MacLeod
Deputy County Attorney  Senior Assistant County Attorney
(914) 995-3616  (914) 995-4194
dhca@westchestergov.com  scma@westchestergov.com