# Exhibit F



445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
T 914 761 1300
F 914 761 5372
cuddyfeder.com

August 31, 2022

**VIA FEDEX AND ELECTRONIC MAIL**
Joan McDonald
Director of Operations
Westchester County
148 Martine Avenue
White Plains, New York 10601
JMcDonald@westchestergov.com

**VIA FEDEX AND ELECTRONIC MAIL**
Catherine Borgia
Chair, Westchester County Board of Legislators
800 Michaelian Office Building
148 Martine Avenue
White Plains, New York 10601
cxb9@westchestergov.com

Re:   *Agreement of Lease, dated June 1, 2016 (the "Lease") between the County of Westchester, as landlord ("County") and White Plains Aviation Partners, LLC d/b/a Million Air White Plains, as tenant ("Million Air")*[1]

Dear Ms. McDonald and Ms. Borgia:

      We write on behalf of Million Air and in response to your letter, dated July 19, 2022, which you sent, in turn, in further response to our March 16, 2022 letter. The March 16 letter requested, pursuant to Section 5.5 of the Lease, that the County consent to and approve Million Air's proposal to construct certain improvements to Million Air's leased Premises at the Westchester County Airport (the "Airport"). In particular, and as set forth in our March 16 letter, Million Air seeks to modify an existing T-hangar located on the Premises with an updated and larger hangar. By letter dated April 22, 2022—one business day before the forty-day deadline for the County respond to Million Air's request under section 5.5—the County responded to our March 16 letter, raising nine objections to the County's consideration of Million Air's request at the present time. By letter dated May 13, 2022, we responded to Ms. McDonald's letter, addressing each of her stated objections.

      Your July 19 letter states that you have "now had the opportunity" to review Million Air's proposal, together with additional information provided by Million Air's Chief Executive Officer, Roger Woolsey, by Avports (the County's airport manager), and by the County's

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease.



Airport Advisory Board ("AAB"). The letter indicates that the County "has determined that it cannot approve Million Air's proposal until and unless" Million Air resolves certain purported issues.

While we are pleased that the County is apparently no longer asserting a number of the nine initial objections articulated in its April 22 letter, the remaining issues set forth in the July 19 letter are similarly unreasonable. We address each of these in turn below.[2]

Issues Relating to AAB Concerns

The first issue you raise relates to concerns noted by the AAB during the Board of Legislators' "Committee of the Whole" meeting on June 8, 2022, and in a subsequent letter dated June 20, 2022, which is appended to your July 19 letter. Specifically, you note the AAB's concern that Million Air's proposal runs counter to a requirement in Section 3.1 of the Lease that the leased Premises be used "for the operation of a Light General Aviation Facility." However, Section 3.1(a)(i) of the Lease expressly contemplates that adjustments to LGA services may be made based on market demand, providing that every five years during the lease Term, the County and Million Air "shall evaluate market demand for light general aviation services and agree on adjustments as necessary."

You also claim that Million Air's representation that the proposed new hangar would be sufficient to support any changes in the LGA market demand over the last five years "does not satisfy the Lease's requirement that this market evaluation be conducted jointly." While the County has never previously requested to participate in a joint market evaluation, Million Air is happy to work with the County to conduct one.

In that regard, Million Air's own inquiries into market demand for LGA services confirm that its proposed new hangar would both satisfy demand for LGA services and increase LGA capabilities at its FBO. As an initial matter, and contrary to your assertion, Million Air's Lease does *not* require T-hangar accommodation on the Premises. Your assertion appears to rest on Section 3.1 of the Lease, which provides as follows:

> County represents that the Lessee may use, and the Lessee shall occupy and use, the Premises for the following purposes and for no other purpose whatsoever:
>
> (A) (i) for the operation of a Light General Aviation Facility, including, but not limited to: servicing, repair and maintenance of aircraft; sales of aircraft; aircraft

---

[2] Nothing herein should be considered a concession or waiver regarding Million Air's position that the County has breached Section 5.5 of the Lease, and Million Air reserves all rights concerning the same.



August 31, 2022
Page 3

tiedown; aircraft hangar accommodation; aircraft T-hangar accommodation; pilot shop; flight school; charter; aircraft management; and aircraft fuels and lubricant sales.

To the extent that the County is suggesting that the word "shall" in Section 3.1 means that Million Air *must* provide T-hangar accommodation on the Premises, that interpretation is nonsensical. Rather, Section 3.1 provides that Million Air "shall" occupy and use the Premises "for the operation of a Light General Aviation Facility"—exactly what Million Air does—and then enumerates certain possible attendant functions of operating a LGA, "including, but not limited to . . . aircraft T-hangar accommodation." To interpret Section 3.1 as *requiring* Million Air to provide T-hangar accommodation at the Premises would mean that Million Air also is required to provide all of the possible LGA-related functions listed in that Section, including, for example, "sales of aircraft" and a "pilot shop," among other things. Million Air does not provide such functions at the Premises, and the County has never suggested, and nor can it reasonably suggest, that Million Air is required to do so. For the same reason, Section 3.1 does not require Million Air to maintain T-hangars at the Premises.

In any event, Million Air's proposed new hangar squarely addresses market demand for LGA services. The proposed new hangar would allow hangaring of fourteen LGA aircraft, while the current T-Hangar has spaces for only thirteen LGA aircraft.[3] Moreover, Million Air has confirmed that most of its LGA customers who currently desire hangar space would prefer the proposed new hangar over the existing T-Hangar. In particular, a number of Million Air's LGA customers would prefer to hangar their aircraft in the proposed new hangar because it would allow them to pay significantly less rent for their aircraft: in the proposed new hangar, these customers would be able to pay for the actual square footage used by their aircraft, as opposed to paying the fixed, and substantially higher, cost of a T-hangar stall. A number of Million Air's LGA customers also prefer to hangar their aircraft only in the winter months, which would make the flexibility and lower price of renting space on as-needed basis in the proposed new hangar more desirable to them than that of the annual rental and much higher cost of a T-hangar stall.[4]

---

[3] Million Air also maintains and provides its LGA customers with two rows of T-hangars spaces, located behind the main Hangar on its leased premises.

[4] Your July 19 letter also echoes the AAB's statements questioning the fact that grading issues prevent proper use of the current T-Hangar and that the T-Hangar is not suitable for modern aircraft. Million Air stands by its documented position on these issues, and is happy to provide any further documentation in support. In addition, Million Air notes that, other than snow removal equipment in one of the stalls in the current T-Hangar, Million Air has or will shortly be removing any other equipment or items from the current T-Hangar. However, these issues are irrelevant to whether the proposed new hangar should be approved, because as noted the proposed new hangar would increase LGA capability at Million Air's FBO.



August 31, 2022
Page 4

      Given all of these circumstances, the proposed new hangar more than satisfies the Lease requirements concerning the operation of a LGA Facility, and the County's asserted issues concerning T-hangar space for LGA aircraft therefore do not provide a reasonable basis for the County to withhold approval for the proposed new hangar.

      However, in a further attempt to address the County's concerns, if the County approves the proposed new hangar, Million Air would be willing to construct an additional row of fourteen T-hangars, to be located near the existing two rows of T-hangars behind Million Air's current main Hangar. This would provide more T-Hangar spaces than the thirteen spaces in the existing T-Hangar, and, given the sparse demand by Million Air's customers for T-hangar space, would satisfy any purported need for additional T-hangars on the leasehold. If this proposal is acceptable to the County, Million Air can submit a proposal for this construction in accordance with the Lease. Please let us know if this proposal is acceptable.

<u>Issues Relating to Approvals</u>

      Your July 19 letter next restates the County's erroneous position that it cannot approve Million Air's proposal because Million Air has not "procure[d] all required approvals and/or permits" under section 5.10 of the Lease, including environmental approvals under the State Environmental Quality Review Act ("SEQRA") and the National Environmental Policy Act ("NERA"). As we explained in our May 13 letter, the Lease clearly contemplates that the County's approval or disapproval of Million Air's requested improvements occur *before* such governmental approvals are obtained.

      In response, you simply reiterate the County's position that the County cannot grant approval to the requested improvements until after the FAA completes its NEPA review. That position is flatly incorrect and is based on a misplaced reading of 40 C.F.R. § 1506.1(a). That regulation provides that "until an agency issues a finding of no significant impact . . . or record of decision, . . . no action concerning the proposal may be taken that would (1) [h]ave an adverse environmental impact; or (2) [l]imit the choice of reasonable alternatives." Approval by the County of the proposed improvements would do neither. Rather, commencement of the proposed improvements would be contingent on approval under NEPA. And, as stated in our May 13 letter, Million Air's position is consistent with a reasonable reading of the Lease and with customary practice in land use developments projects. Indeed, your July 19 letter acknowledges (at footnote 2) that the County approved the initial Proposed Improvements under the Lease before receiving approval under NEPA, undermining any assertion that the County cannot approve the proposed new hangar until after FAA review under NEPA.



August 31, 2022
Page 5

Issues Relating to Ferry Flights

Third, the County asserts that it needs additional information to determine the "full scope" of the reduced ferry flights that would result from the proposed new hangar, and the length of time that this benefit might endure. In particular, while acknowledging that Million Air has provided the County with the September 2019 Activity Assessment from Landrum & Brown, the County now claims to need a list of the prospective tenants/customers/occupants for the proposed new hangar, including aircraft tail numbers, together with copies of any relevant agreements or letters of intent.

It is unclear why the County needs this information; the Landrum & Brown report plainly provides a sufficient, reasoned explanation for the anticipated reduction in ferry flights. Moreover, it is premature for the County to request agreements or letters of intent, given that prospective customers will not enter into agreements until Million Air receives approval for the proposed new hangar. As such, this does not provide a reasonable basis for the County to withhold approval for this hangar.

Equal Treatment of Airport Tenants

Finally, the County reiterates its position that the County is required under its federal Grant Assurances to treat all Airport tenants equally, and that Million Air's proposal must therefore be considered together with "similar requests from other FBO tenants."

As explained in our May 13 letter, the County's position finds no support in the Lease, but even if it did, the County's reference to unspecified "similar requests from other FBO tenants" is not a good faith basis for failing to approve the proposed improvements in the time required under the Lease.

\*     \*     \*     \*     \*

Million Air appreciates the County's prompt attention to this matter and remains prepared to work with the County to take all actions required under the Lease to move forward with the proposed new hangar, which will provide tangible benefits to the County and its residents.

Very truly yours,

Eon Nichols

cc: Roger Woolsey